Howard Wisnia, Esq. (SBN 184626)
E-mail: hwisnia@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile:  (858) 314-1501

Marvin S. Gittes, Esq.
E-mail: mgittes@mintz.com
Timur E. Slonim, Esq.
E-mail: tslonim@mintz.com
Peter F. Snell, Esq.
E-mail: psnell@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
666 Third Avenue
New York, NY 10017
Telephone:  (212) 692-6800
Facsimile:   (212) 983-3115

Ronald E. Cahill, Esq.
E-mail: rcahill@nutter.com
Heather B. Repicky, Esq.
E-mail: hrepicky@nutter.com
NUTTER, MCCLENNEN & FISH, LLP
Seaport West
155 Seaport Boulevard,
Boston, MA 02210
Telephone:  (617) 439-2000
Facsimile:   (617) 310-9000

Attorneys for Defendant
AMERICAN TECHNICAL CERAMICS CORP.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRESIDIO COMPONENTS, INC.,<br><br>  Plaintiff and Counter-Defendant,<br><br>  v.<br><br>AMERICAN TECHNICAL CERAMICS CORP.,<br><br>  Defendant and Counter-Claimant. | Case No. 3:14-cv-02061-H-BGS<br>**ATC'S REPLY MEMORANDUM IN SUPPORT OF NO WILLFUL INFRINGEMENT**<br><br>Hearing:       17 June, 2016, 10:00 a.m.<br>Courtroom: 15A, 15th Floor<br>Judge:          Hon. Marilyn L. Huff |

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................1

I. THE JURY HAS NOT DECIDED OBJECTIVE WILLFULNESS...............1

II. PRESIDIO CONTINUES ITS FAILED EFFORTS TO "FLIP THE BURDEN" WITH ITS "ATC DID NO TESTING" ARGUMENTS .............3

III. KEYSIGHT AND OTHER TESTIMONY PROVIDED AT TRIAL ONLY SUPPORTS ATC'S INDEFINITENESS DEFENSE.........................6

IV. PRESIDIO REWRITES HISTORY ON THE INDEFINITENESS OF THE '356 PATENT ......................................................................................8

CONCLUSION ..................................................................................................................8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple v. Samsung Electronics Co., Ltd.*, 920 F.Supp.2d 1079 (N.D. Cal. 2013) ...... 8

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003
    (Fed. Cir. 2012) ............................................................................................... 1

*Halo Electronics v. Pulse Electronics*, 2016 U.S. LEXIS 3776 (U.S. June 13, 2016)
    [Ex. A] ........................................................................................................ 1, 2

*Multimedia Patent Trust v. Apple Inc.*, No. 10-cv-2618-H (KSC), 2012 WL
    6863471 (S.D. Cal. Nov. 9, 2012) .................................................................. 2

**Statutes**

35 U.S.C. 112 ............................................................................................................. 8

37 CFR 1.552 ............................................................................................................. 8

# INTRODUCTION

The Supreme Court this morning decided the *Halo* case. [*Halo*, Ex. A; *see* D.I. 343-1 at 20-21 for discussion.] With *Halo* committing enhanced damages to the discretion of the Court, the jury finding on the subjective prong of *Seagate* is void and should count for nothing here. Instead, this Court must be guided by the "'sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act." [*Halo*, Ex. A at *24 (citation omitted); *see* D.I. 343-1 at 20-21 for an explanation of those principles, including *Safeco*.] The Court should now disregard the jury finding on willfulness and decide in its discretion that ATC is not a "wanton pirate" based on ATC's careful evaluation of its defenses as of December 8, 2015.[1]

## I. THE JURY HAS NOT DECIDED OBJECTIVE WILLFULNESS

Presidio directs the first five pages of its Opposition brief almost exclusively to the proposition that the jury has already decided the objective prong under *Seagate*. [D.I. 354 at 1-5.] There is no dispute that whether a defense is

---

[1] While the Court can conclude based on the objective issues raised in ATC's briefs that Presidio could not meet its burden on willfulness, ATC notes that because of the division in briefing under the old law (objective to the Court, subjective to the jury to be addressed on Rule 50(b) after entry of judgment), ATC has only argued half its case on no willful infringement. ATC will raise additional subjective facts and factors in further briefing, such as the fact that ATC did not copy, but rather that its accused products had a unique design.

1

reasonable is a question for the judge.[2]  This Court has held the same, and has done so here.[3] *Halo* is no different. [*Halo* Ex. A at *20-21 (committing enhanced damages to the discretion of the court—not the jury).]

Consistent with the old law, the Court instructed the jury on the now defunct subjective prong of *Seagate*.  We know this because the language of the instruction matches perfectly the subjective prong language in *Seagate*:

| D.I. 327 at 35 (Court's Instruction No. 27) | *Seagate* at 1371 (parenthetical removed) |
|---|---|
| To demonstrate such "reckless disregard," Presidio must persuade you that ATC actually knew, or it was so obvious that ATC should have known, that its actions constituted infringement of a valid patent. | If [the] objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk was either known or so obvious that it should have been known to the accused infringer. |

The instruction then emphasizes five factors for the jury to consider, among other facts, regarding the subjective prong.

In the context of this jury instruction that is directed to the subjective prong, and within factor three (which expressly refers to a belief), there is a reference to a "reasonable defense."  Presidio pulls the words "reckless disregard" and

---

[2] "[T]he judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

[3] *Multimedia Patent Trust v. Apple Inc.*, No. 10-cv-2618-H (KSC), 2012 WL 6863471, at *15 (S.D. Cal. Nov. 9, 2012) (quoting *Bard* at 1007); D.I. 210, at 20-21 (citing cases for the proposition that the Court decides the objective prong).

"reasonable defense" out of the context of the jury instruction and out of the context of the governing law.  Presidio asserts that because the jury has heard these words, the jury has necessarily found all of the facts necessary to make a final determination of willfulness, including deciding the objective prong. [D.I. 354 at 2-4.]  The jury has not weighed in on whether ATC's defenses are objectively reasonable because factually it did not (its instruction was on the subjective prong), and because legally it cannot.

Presidio further describes "[w]hether ATC's defenses were reasonable" as "an issue that was directly addressed by the jury." [D.I. 354 at 4-5.]  As noted above, Presidio takes the term "reasonable defense" out of context in an unavailing effort to convert a subjective jury instruction into an objective verdict.  Further, factor number three is one of five enumerated factors that the jury "should" consider, along with all other relevant facts.  [D.I. 327 at 35-36.]  There is simply no basis for saying that this issue was addressed by the jury.

## II. PRESIDIO CONTINUES ITS FAILED EFFORTS TO "FLIP THE BURDEN" WITH ITS "ATC DID NO TESTING" ARGUMENTS

Presidio moved for summary judgment of infringement based on its "ATC did no testing" theory. [D.I. 146.]  The Court denied Presidio's motion, finding that "it is sufficient for ATC to present evidence controverting the analysis, opinions, and conclusion of Presidio's infringement expert, which, indeed, is what

3

ATC has done in the present case."[4]  [D.I. 210 at 15.]  Presidio failed in its attempt to "flip the burden" from Presidio to ATC on the issue of infringement.  Presidio presses on undeterred, arguing some 15 times in its Opposition that ATC has done no testing.

More important to this case than Presidio's tactic, however, is that no test can resolve whether external contacts are located sufficiently close so as to form the fringe-effect capacitance of the claims.  This fact is fatal to the arguments on the reasonability of ATC's defenses in Presidio's Opposition, and to Presidio's infringement and definiteness cases more generally.

Notably, the inventors never performed any fringe effect capacitance testing, and didn't do so before the filing of the '356 patent with the Patent Office. [Ex. 3, Trial Tr. I-149:3-13.][5]  It therefore comes as no surprise that the '356 patent itself describes no such testing.  In fact, Presidio's expert testified quite clearly, that there is no test described in the patent for determining fringe effect capacitance according to the claims:

> **Q.** If the '356 patent had disclosed how to test for the fringe-effect capacitance between the external contacts of a multilayer

---

[4] In fact, ATC has disproven Presidio's infringement case in two ways: (1) by adducing affirmative evidence that the high frequency performance of the accused products comes from internal structures [D.I. 343-1 at 9-10], and (2) by explaining affirmatively and though cross-examination that Presidio's testing fails to show anything [D.I. 343-1 at 10-15].

[5] Trial transcript references herein are cited to Exhibits 3-7 from its brief on indefiniteness, D.I. 341-1.

> ceramic capacitor, would you have used that test in your analysis in this case, yes or no?
>
> **A**. Hypothetical. It doesn't—it doesn't include the test. . . .

[Ex. 5, Trial Tr. III-178:6-14 (Huebner).] Presidio's expert went on to testify that the experiments he performed for the purpose of this litigation were not described in the patent:

> **Q.** Now, the '356 patent, Plaintiff's Exhibit 1, does not describe your combination of experiments as a way to determine whether a multilayer ceramic capacitor has a fringe-effect capacitance between its external contacts that's capable of being determined by measurement, correct?
>
> **A**. That is correct. There would have been no need to retain me if it had been in them.

[Ex. 5, Trial Tr. III-137:6-12 (Huebner).][6]

Confirming that no tests were available, Presidio's expert admitted that there were no tests for determining fringe effect capacitance between the external contacts of a multilayer capacitor described in the scientific literature. [Ex. 5, Trial Tr. III-109:3-8 (Huebner).] He also unambiguously admitted that he made up his own tests for the purpose of this trial:

> **Q.** They sought you out because 13 or 14 years later – so 13 or 14 years after the 2002 time frame for the application for the '356 patent was filed, there still is not a test anywhere described in any industry publication or peer reviewed article that would tell

---

[6] ATC's expert, on the other hand, would have loved to have a test that he could have used—but there simply are none. [Ex. 6, Trial Tr. IV-84:12-15 (Ulrich) ("but if there is a test I could have run that I thought would have shed some light on this, I'd have been all over it, but there just simply isn't one").]

5

ATC'S MEMO OF POINTS AND AUTHORITIES                         CASE NO. 3:14-cv-02061-H-BGS

>   someone how to test for the last element in Claim 1. You had to get involved in this case to invent that in the first instance.
> **A**. This is how science proceeds. It's on the basis -- what's the -- need is the mother of all invention. There was no need to try to figure this out before this time period because there was no lawsuit. . . . there was no need to pull it all together until this infringement case came up.

[Ex. 5, Trial Tr. III-158:16-159:9 (Huebner).]

Even if the burden of proof could be flipped—there is no test, none described in the patent and none described in the literature, that ATC's experts could have performed to disprove infringement. ATC's non-infringement defense, even without such non-existent testing, is objectively reasonable.

### III. KEYSIGHT AND OTHER TESTIMONY PROVIDED AT TRIAL ONLY SUPPORTS ATC'S INDEFININTENESS DEFENSE

At trial, ATC presented testimony from its expert, Dr. Schaper, and from third party Keysight Technologies (through the person of Keith Anderson) as part of its reasonable indefiniteness defense.[7] Presidio responds in its opposition that it has demonstrated that Dr. Schaper is retired. [D.I. 354 at 16.][8] Presidio goes on to

---

[7] ATC's indefiniteness defense also relies on multiple dispositive admissions from Presidio's expert. [*See*, *e.g.*, D.I. 341-2 at 5-8 (ATC's memo regarding indefiniteness).]

[8] Presidio consistently attacks ATC's experts *ad hominem*. However, both Dr. Ulrich and Dr. Schaper were qualified as experts to testify based on their deep technical expertise and experience with multi-layer capacitors in exactly the right 2002 time frame. [Ex. 6, Trial Tr. IV-57-70 (especially IV-69, Ulrich); and Ex. 7, Trial Tr. V-20-30 (Schaper).] It is not the problem of ATC or its experts that Presidio wasted precious trial time asking Dr. Schaper if he was enjoying his retirement [Ex. 7, Trial Tr. V-75:2-6 (Schaper)] and grilling Dr.

mischaracterize Mr. Anderson's testimony as supportive of its expert—testimony that its expert disagrees with—in an unavailing effort to make ATC's defense appear unreasonable. [D.I. 354 at 15-17 (Presidio argument); D.I. 341-1 at ¶42 (ATC Statement of Material Fact regarding disagreement).]

Presidio argues that Mr. Anderson supports its expert in that one could use a change in network analyzer measurements to make assumptions about what occurred inside a multilayer ceramic capacitor and to develop a model regarding the same. [D.I. 354 at 15-16.] Instead, Mr. Anderson actually explained that an engineer cannot reliably or objectively understand the significance of a change to the insertion loss data (*i.e.*, the S parameter data) because that data "does not imply that that's what really is going on inside the device. It just means that the data matches the model that you've picked." [Ex. 6, Trial Tr. IV-179:8-180:4 (Anderson).] Mr. Anderson made it clear that while a change in the S-parameters of a device can imply that *a* change was made, the network analyzer cannot be used to determine *what* change was made. [Ex. 6, Trial Tr. IV-176:6-22 (Anderson).] And while the user might have a hypothesis or model, "there is no direct linkage between that, whatever the user is thinking of, and what the network analyzer does." [Ex. 6, Trial Tr. IV-177:21-178:24 (Anderson).] ATC's evidence makes clear that a network analyzer cannot be used in the manner that Presidio

Ulrich about someone else's Web site that listed his papers relating to greenhouse gasses. [Ex. 6, Trial Tr. IV-151:20-155:22 (Ulrich).]

7

says.

## IV. PRESIDIO REWRITES HISTORY ON THE INDEFINITENESS OF THE '356 PATENT

*Apple v. Samsung Electronics Co., Ltd.*, 920 F.Supp.2d 1079 (N.D. Cal. 2013) is substantially persuasive on the issue presented here. [D.I. 343-1 at 19-20.] Presidio responds by relying on sleight of hand, including relying on reexamination procedure that was improperly presented to the jury. PTX 315,[9] which presents 37 CFR 1.552 on its third page, was typographically manipulated to change its meaning in order to support Presidio's indefiniteness position.[10] Contrary to Presidio's assertion [D.I. 354 at 21], the Patent Office has not affirmed the definiteness of the '356 patent as argued by Presidio.

## CONCLUSION

The Court should find that ATC does not willfully infringe the '356 patent.

---

[9] Remarkably, Presidio twice tried to publish PTX 315 to the jury as a demonstrative—and both times ATC objected and those objections were sustained. [Ex. 4, Trial Tr. II-177:22-178:10, II-184:6-16 (Humphrey).] Presidio still published the exhibit to the jury during its closing argument. [Ex. B, Trial Tr. VI-62:21 (Presidio closing).]

[10] Presidio's call-out box says "Claims in an *ex parte* reexamination proceeding will be examined . . . on the basis of the requirements of **35 U.S.C. 112**,"—in fact, the rule says "Claims in an *ex parte* reexamination proceeding will be examined on the basis of patents or printed publications." The Examiner only considers section 112 issues for matter added or deleted in the claims. [Ex. C, PTX 315 at 3.]

| | |
|---|---|
| Dated:  June 13, 2016 | MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC<br><br>By  s/ *Marvin S. Gittes, Esq.*<br>         (mgittes@mintz.com)<br><br>Attorneys for Defendant<br>AMERICAN TECHNICAL CERAMICS CORP.<br><br>*OF COUNSEL:*<br><br>Marvin S. Gittes, Esq.<br>E-mail: mgittes@mintz.com<br>Timur E. Slonim, Esq.<br>E-mail: tslonim@mintz.com<br>Peter F. Snell, Esq.<br>E-mail: psnell@mintz.com<br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**<br>666 Third Avenue<br>New York, NY 10017<br>Telephone:  (212) 692-6800<br>Facsimile:   (212) 983-3115<br><br>Ronald E. Cahill, Esq.<br>E-mail: rcahill@nutter.com<br>Heather Repicky, Esq.<br>E-mail: hrepicky@nutter.com<br>**Nutter, McClennen & Fish, LLP**<br>Seaport West<br>155 Seaport Boulevard,<br>Boston, MA 02210<br>Telephone:  (617) 439-2000<br>Facsimile:   (617) 310-9000 |

9