1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESIDIO COMPONENTS, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>AMERICAN TECHNICAL CERAMICS CORP.,<br><br>                                    Defendant. | Case No.:  14-cv-02061-H-BGS<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL;**<br><br>[Doc. Nos. 399, 400, 402.]<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION;**<br><br>[Doc. No. 373.]<br><br>**(3) DENYING PLAINTIFF'S MOTION FOR ENHANCED DAMAGES AND ATTORNEY'S FEES; AND**<br><br>[Doc. No. 377.] |

1

**(4) GRANTING PLAINTIFF'S MOTION FOR SUPPLEMENTAL DAMAGES AND INTEREST**

[Doc. No. 372.]

On June 22, 2016, Plaintiff Presidio Components, Inc. filed (1) a motion for a permanent injunction; (2) a motion for enhanced damages and attorney's fees; and (3) a motion for supplemental damages and interest. (Doc. Nos. 372, 373, 377.) On July 13, 2016, Defendant American Technical Ceramics Corp. filed its responses in opposition to Presidio's three motions. (Doc. Nos. 391, 393, 394.) On July 20, 2016, Presidio filed its replies in support of its motions. (Doc. Nos. 412, 414, 415.)

On July 15, 2016, ATC filed (1) a motion for judgment as a matter of law and new trial of no infringement; (2) a motion for judgment as a matter of law and new trial of no willfulness and no induced infringement; and (3) a motion for judgment as a matter of law and new trial of no lost profits. (Doc. Nos. 399, 400, 402.) On July 29, 2016, Presidio filed its responses in opposition to ATC's three motions. (Doc. Nos. 423, 424, 426.) On August 5, 2016, ATC filed its replies in support of its motions. (Doc. Nos. 432, 433, 434.)

The Court held a hearing on the matters on August 17, 2016. Gregory Ahrens and Brett Schatz appeared for Presidio. Peter Snell and Ronald Cahill appeared for ATC. For the reasons below, the Court: (1) denies ATC's motions for judgment as a matter of law and new trial; (2) grants Presidio's motion for a permanent injunction; (3) denies Presidio's motion for enhanced damages and attorney's fees; and (4) grants Presidio's motion for supplemental damages and interest.

///

///

///

2

**Background**

On September 2, 2014, Presidio filed a complaint for patent infringement against ATC, alleging infringement of U.S. Patent No. 6,816,356 ("the '356 patent"). (Doc. No. 1, Compl.) The '356 patent is entitled "Integrated Broadband Ceramic Capacitor Array." U.S. Patent No. 6,816,356 B2, at 1:1-2 (filed Apr. 14, 2003). The patent issued on November 9, 2004 and claimed priority to an application filed on May 17, 2002. See id. (See Doc. No. 276-3 ¶ 4; Doc. No. 356-1 at 5.)

A capacitor is a passive electrical component that stores and releases energy and is used in a variety of electrical devices. Presidio Components, Inc. v. American Technical Ceramics Corp., 702 F.3d 1351, 1355 (Fed. Cir. 2012). Generally, a capacitor comprises two parallel metal plates separated by a non-conductive material such as ceramic or air, known as a dielectric. Id. When a capacitor is connected to a power source, electricity passes through the metal plates, but not the dielectric, causing a positive charge to accumulate on one plate and a negative charge on the other. Id. "The capacitor may release this stored energy by connecting the two plates through a conductive path that closes the circuit." Id. "The amount of energy a capacitor can store is its 'capacitance.'" Id.

Multiple capacitors may be combined to create a "multilayer capacitor." Id. A multilayer capacitor is made of several layers of conductive and non-conductive materials stacked together. Id. Each layer in the multilayer capacitor has its own electrical properties affecting the overall performance of the capacitor. Id.

The '356 patent claims a multilayer capacitor design and teaches a multilayer integrated network of capacitors electrically connected in series and in parallel. Id.; Presidio Components, Inc. v. American Technical Ceramics Corp., 723 F. Supp. 2d 1284, 1289 (S.D. Cal. 2010), vacated on other grounds, 702 F.3d 1351 (Fed. Cir. 2012). This network of capacitors is disposed within a "substantially monolithic dielectric body," as shown below in Figure 10A. Presidio, 702 F.3d at 1355. The claimed multilayer capacitor creates capacitance between internal parallel plate combinations 10 and 11 while simultaneously creating fringe-effect capacitance between external contacts 72 and 74. Id.

3



FIG. 10A

On December 8, 2015, the United States Patent and Trademark Office issued a reexamination certificate for the '356 patent, amending certain claims of the patent.[1]  (Doc. No. 170-2, FAC Ex. 2.)  Amended claim 1 of the '356 patent, the only independent claim asserted by Presidio in this action, is as follows:

1.  A capacitor comprising:

a substantially monolithic dielectric body;

a conductive first plate disposed within the dielectric body;

a conductive second plate disposed within the dielectric body and forming a capacitor with the first plate;

a conductive first contact disposed externally on the dielectric body and electrically connected to the first plate; and

a conductive second contact disposed externally on the dielectric body and electrically connected to the second plate, and the second contact being located sufficiently close to the first contact in an edge to edge relationship in such proximity as to form a first fringe-effect capacitance with the first contact that is capable of being determined by measurement in terms of a standard unit.

---

[1]   The PTO previously issued a reexamination certificate for the '356 patent on September 13, 2011.  (Doc. No. 170-1, FAC Ex. 1.)  This reexamination certificate did not alter any of the claims at issue in the present action.  (Id.)

U.S. Patent No. 6,816,356 C2, at 1:23-36 (Reexamination Certificate filed Dec. 8, 2015) (emphasis removed from original).   The claims in the reexamination certificate were amended in order to overcome a final rejection by the PTO examiner, rejecting the claims at issue as anticipated by the AVX MLC Catalog reference, and in the alternative, as obvious over the AVX MLC Catalog reference in view of the Ceramic Capacitor Technology reference.  (See Doc. No. 212-2, Slonim Decl. Exs. 1, 2, 8, 11.)

On December 22, 2015, Presidio filed a first amended complaint, alleging infringement of the '356 patent as amended by the reexamination certificate.  (Doc. No. 170, FAC.)  Specifically, Presidio alleged that ATC's 550 line of capacitors infringes claims 1, 3, 5, 16, 18, and 19 of the '356 patent.  (Id. ¶ 26.)  On December 22, 2015, ATC filed a second amended answer and counterclaims to the first amended complaint, adding an affirmative defense of absolute and equitable intervening rights and an affirmative defense and counterclaim of unenforceability due to inequitable conduct.  (Doc. No. 171.)

On January 12, 2016, the Court denied Presidio's motions for: (1) summary judgment of definiteness; (2) summary judgment of infringement; (3) summary judgment of ATC's equitable affirmative defenses; and (4) summary judgment of no acceptable non-infringing alternatives.  (Doc. No. 210.)  In the order, the Court also denied ATC's motions for: (1) partial summary judgment of non-infringement; (2) summary judgment of indefiniteness; and (3) summary judgment of no willful infringement.  (Id.)  On February 10, 2016, the Court granted ATC's motion for summary judgment of its affirmative defense of absolute intervening rights and held that Presidio is entitled to infringement damages only for the time period following the issuance of the reexamination certificate on December 8, 2015.  (Doc. No. 234 at 28.)  In that order, the Court also dismissed with prejudice ATC's affirmative defense and counterclaim that the '356 patent is unenforceable due to inequitable conduct.  (Id. at 33.)

The Court held a jury trial beginning on April 5, 2016.  (Doc. No. 297.)  During the trial, on April 8, 2016, ATC filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  (Doc. No. 307.)  On April 18, 2016, the jury

returned a verdict finding direct infringement and induced infringement of claims 1, 3, 5, 16, 18, and 19 of the '356 patent by ATC as to all of the accused products in the action: the 550L, the 550S, the 550U, and the 550Z capacitors.  (Doc. No. 328 at 2-3.)  In addition, the jury found that Presidio had proven by clear and convincing evidence that ATC's infringement of the asserted claims was willful.  (Id. at 4.)  The jury awarded Presidio $2,166,654 in lost profit damages.  (Id.)  The jury also issued an advisory verdict as to indefiniteness and found that ATC had failed to prove by clear and convincing evidence that claim 1 of the '356 patent is indefinite.[2]  (Id. at 5.)

On June 17, 2016, the Court issued a memorandum decision finding in favor of Presidio and against ATC on all issues submitted to the Court, including indefiniteness, equitable intervening rights, equitable estoppel, and laches.  (Doc. No. 368.)  On June 17, 2016, the Court entered judgment in favor of Presidio on all causes of action and awarded Plaintiff $2,166,654 in damages.  (Doc. No. 369.)

By the present motions, ATC moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial pursuant to Rule 59 on the following issues: (1) infringement; (2) induced infringement; (3) willful infringement; and (4) lost profits.  (Doc. Nos. 399, 400, 402.)  Presidio moves for: (1) a permanent injunction; (2) enhanced damages; (3) attorney's fees; (4) supplemental damages; and (5) prejudgment and postjudgment interest.  (Doc. Nos. 372, 373, 377.)

///

///

///

---

[2]     The verdict form initially had the "Yes" box marked in response to question No. 6 "Has ATC proved by clear and convincing evidence that claim 1 of the '356 patent is indefinite?"  (Doc. No. 328 at 5.)  During the reading of the verdict in open court, the jurors agreed that checking the "Yes" box in response to question No. 6 was a clerical error and then amended the verdict form to reflect that the "No" box should be checked.  (See id.; Doc. No. 333 at 8-11.)

## Discussion

# I.   ATC's Motions for Judgment as a Matter of Law and for a New Trial

### A.   Legal Standard for a Rule 50 Motion for Judgment as a Matter of Law

In a patent case, a motion for judgment as a matter of law is governed by the regional circuit, here the Ninth Circuit.  InTouch Techs., Inc. v. VGO Commc'ns, Inc., 751 F.3d 1327, 1338 (Fed. Cir. 2014).  Under Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law ("JMOL") only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1); see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000).  In other words, judgment as a matter of law is proper when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); accord InTouch Techs., 751 F.3d at 1338; see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) ("JMOL should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'").  In contrast, "[a] jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  Pavao, 307 F.3d at 918.

In deciding a motion for judgment as a matter of law, a court "must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe."  Harper v. City of Los Angeles, 533 F.3d 1010, 1021 (9th Cir. 2008); see Reeves, 530 U.S. at 150-51.  A district court "may not make credibility determinations or weigh the evidence."  Reeves, 530 U.S. at 150.  "'[T]he court must accept the jury's credibility findings consistent with the verdict' . . . [and] 'may not substitute its view of the evidence for that of the jury.'"  Winarto v. Toshiba Am. Elecs. Components,

1    Inc., 274 F.3d 1276, 1283 (9th Cir. 2001).

2        B.    Legal Standard for a Rule 59 Motion for New Trial

3        In a patent case, a motion for a new trial is also governed by the law of the regional

4    circuit.  InTouch Techs., 751 F.3d at 1338.  Under Federal Rule of Civil Procedure 59(a),

5    a district court "may, on motion, grant a new trial on all or some of the issues–and to any

6    party– . . . after a jury trial, for any reason for which a new trial has heretofore been granted

7    in an action at law in federal court."  "Rule 59 does not specify the grounds on which a

8    motion for a new trial may be granted.  Rather, the court is bound by those grounds that

9    have been historically recognized."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir.

10   2007) (internal citations and quotation marks omitted).  In the Ninth Circuit, "'[t]he trial

11   court may grant a new trial only if the verdict is contrary to the clear weight of the evidence,

12   is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'"  Id.; see

13   also Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed. Cir. 2009) ("[A]

14   district court in the Ninth Circuit 'may grant a new trial only if the verdict is against the

15   clear weight of the evidence.'").  "Unlike with a Rule 50 determination, [a] district court,

16   in considering a Rule 59 motion for new trial, is not required to view the trial evidence in

17   the light most favorable to the verdict.  Instead, the district court can weigh the evidence

18   and assess the credibility of the witnesses."  Experience Hendrix L.L.C. v.

19   Hendrixlicensing.com Ltd, 762 F.3d 829, 842 (9th Cir. 2014).  "'[A] district court may not

20   grant a new trial simply because it would have arrived at a different verdict.'"  Wallace v.

21   City of San Diego, 479 F.3d 616, 630 (9th Cir. 2007).

22       "The grant of a new trial is 'confided almost entirely to the exercise of discretion on

23   the part of the trial court.'"  Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir.

24   1990) (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)).  On appeal,

25   the Ninth Circuit "afford[s] considerable deference to the district court's new trial decision

26   and will not overturn the district court's decision to grant a new trial absent an abuse of

27   discretion."  Experience Hendrix, 762 F.3d at 842.  A district court's "denial of a motion

28   for a new trial is reversible 'only if the record contains no evidence in support of the

verdict' or if the district court 'made a mistake of law.'" E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 962 (9th Cir. 2009).

### C.    Infringement

ATC moves for judgment as a matter of law that its 550 capacitors do not infringe claims 1, 3, 5, 16, 18, and 19 of the '356 patent, or in the alternative, for a new trial on the issue of infringement.  (Doc. No. 399-1 at 25.)  Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."  A patent infringement analysis proceeds in two steps. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd 517 U.S. 370.  In the first step, the court construes the asserted claims as a matter of law. See id.  In the second step, the factfinder compares the claimed invention to the accused device.  Id.; see also Verizon Servs. Corp. v. Cox Fibernet Va., Inc., 602 F.3d 1325, 1340 (Fed. Cir. 2010) ("A determination of infringement is a question of fact . . . .").

"[A] patentee who files a complaint or counterclaim alleging patent infringement bears the burden of proving that infringement." Medtronic Inc. v. Boston Sci. Corp., 695 F.3d 1266, 1272 (Fed. Cir. 2012).  "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.  If even one limitation is missing or not met as claimed, there is no literal infringement." Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1308 (Fed. Cir. 2002); accord Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1301 (Fed. Cir. 2011).

ATC argues that it is entitled to judgment as a matter of law of no infringement because Presidio, through its infringement expert, failed to prove that the high frequency performance of the accused products is derived from the fringe-effect capacitance between the capacitors' external contacts rather than from the capacitors' internal electrodes.  (Doc. No. 399-1 at 1-21.)  In response, Presidio argues ATC's contention is based on an improper attempt to redefine the scope of the asserted claims of the '356 patent.  (Doc. No. 424 at 5-9.)  The Court agrees with Presidio.

In its motion, ATC argues that the asserted claims of the '356 patent, as amended by

the December 8, 2015 reexamination certificate, require that the capacitor's high frequency performance derive solely from the fringe-effect capacitance between the capacitor's external contacts; "[h]igh frequency capacitors that derive their high-frequency performance from internal structures of the capacitor do not infringe Presidio's '356 patent." (Doc. No. 399-1 at 1.)  But the asserted claims have never been construed to contain a limitation requiring that the fringe-effect capacitance between the external contacts of the capacitor, and not the internal structures of the capacitor, affect the capacitor's high frequency performance.  Such a limitation is not contained in the plain language of the asserted claims of the '356 patent as amended by the December 8, 2015 reexamination certificate.  See '356 Patent at 13:26-28, 14:1-2, 14:9-16; '356 Patent Dec. 8, 2015 Reexamination Certificate at 1:23-2:9 ("the second contact being located sufficiently close to the first contact in an edge to edge relationship in such proximity as to form a first fringe-effect capacitance with the first contact that is capable of being determined by measurement in terms of a standard unit").  Such a limitation is also not contained in the Court's claim construction order.  (See Doc. No. 103.)  Such a limitation was also not contained in ATC's proposed jury instruction regarding the Court's claim constructions, (Doc. No. 296 at 19), or in the actual instructions that were provided to the jury regarding the Court's claim constructions.  (See Doc. No.327 (Court's Instruction No. 17).)

Further, in determining the scope of the amended claims when ruling on the parties' cross-motions for summary judgment of ATC's absolute intervening rights defense, the Court never found that such a limitation was present in the amended claims.  (See Doc. No. 234.)  Cf. R+L Carriers, Inc. v. Qualcomm, Inc., 801 F.3d 1346, 1350 (Fed. Cir. 2015) (explaining that the determination of claim scope for an intervening rights analysis is "a matter of claim construction").  In determining that that the amendments in the December 8, 2015 reexamination certificate narrowed the scope of the asserted claims, the Court determined "that the scope of the asserted claims as amended by the December 8, 2015 reexamination certificate requires a fringe-effect capacitance that is actually measurable

such as in the manner shown in Figs. 21A and 21B of the '356 patent."  (Id. at 20.)  A fringe-effect capacitance that is negligible or merely theoretically present, i.e., a capacitance that is merely derivable by using theoretical calculations or simulations, is outside the scope of the amended claims.  (Id.)  Figures 21A and 21B of the '356 patent are graphs representing the insertion loss of a capacitor.  '356 Patent at 6:10-16. Accordingly, the Court's absolute intervening rights summary judgment order only holds that the amended claims contain the limitation that the fringe-effect capacitance between the external contacts be capable of being determined by measurement such as through insertion loss measurements, and not merely by using theoretical calculations.  The order does not hold that the amended claims contain a limitation specifically requiring that the fringe-effect capacitance between the external contacts of the capacitors, and not its internal structures, affect the capacitor's high frequency performance.[3]

ATC cannot seek a new claim construction post-trial.  ATC did not request a construction of the asserted claims containing the limitation that the fringe-effect capacitance between the external contacts, not internal structures, affect the capacitor's high frequency performance in its claim construction briefing; at the claim construction hearing; following the issuance of the December 8, 2015 reexamination certification; in its motion for summary judgment on its defense of absolute intervening rights; through a

_____

[3]     ATC notes that the prior court held that Presidio admitted that "'insertion loss' is 'a property critical to and very specific to high frequency performance.'"  (Doc. No. 399-1 at 9 (citing Doc. No. 234 at 5 n.3); see also Doc. No. 432 at 8-9 (citing Doc. No. 235 at 26).)  But ATC fails to further explain how this admission necessitates its proposed construction.  It does not follow that because insertion loss is critical to high frequency performance and the claims require that the fringe-effect capacitance be actually measurable such as through insertion loss testing, that the claims then must require that the fringe-effect capacitance between the capacitor's external contacts, and not internal structures, affect the capacitor's high frequency performance.  At best, this means that if the fringe-effect capacitance is to be measured through insertion loss testing, then it must have some effect on the capacitor's high frequency performance; not that the capacitor's high frequency performance must only be derived from the fringe-effect capacitance between the external contacts and not from any internal structures.  Further, Presidio's infringement expert, Dr. Huebner, testified that although the accused products contain some internal capacitances that help with high frequency performance, the highest frequency performance of the capacitors is achieved by the fringe-effect capacitance.  (Doc. No. 306, Trial Tr. Vol. III at 162-63; see also id. at 27-29, 38-53, 57-63; Doc. No. 331, Trial Tr. Vol. V at 222.)

motion for clarification; in its proposed jury instructions; or its Rule 50(a) motion for judgment as a matter of law.  (<u>See</u> Doc. No. 93, 98, 104, 189, 212-1, 227, 296, 307.) Therefore, ATC waived its argument that the claims should be construed to contain this limitation, and ATC cannot raise this argument through post-trial motions.  <u>See</u> <u>Cordis Corp. v. Boston Sci. Corp.</u>, 561 F.3d 1319, 1331 (Fed. Cir. 2009) ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial."); <u>GPNE Corp. v. Apple Inc.</u>, 108 F. Supp. 3d 839, 850 (N.D. Cal. 2015) ("[Plaintiff's] two claim construction arguments were not raised at the <u>Markman</u> stage or in briefing regarding the jury instructions.  [Plaintiff] provides no citation to prior efforts to raise the latter two arguments, and does not otherwise argue that it properly preserved those arguments for post-trial consideration.  The Court therefore concludes [plaintiff]'s arguments with respect to the purpose of the invention and claim differentiation are waived. A party may not raise new claim construction arguments for the first time in post-trial briefing." (citations omitted)).  In sum, because the Court did not construe the asserted claims to contain the specific limitation requiring that the fringe-effect capacitance between the external contacts of the capacitor, not its internal structures, affect the capacitor's high frequency performance, the Court rejects ATC's argument that it is entitled to judgment as a matter of law on this issue.

ATC also argues that it is entitled to a new trial on the issue of infringement because the Court admitted Dr. Huebner's computer simulation evidence at trial over its objection. (Doc. No. 399-1 at 21-25.)  The Court rejects ATC's request for a new trial on this issue. The simulation testing evidence Dr. Huebner presented at trial was relevant to provide background and context for his opinions and measurements.  The evidence was admitted to demonstrate that fringe-effect capacitance exists between the external contacts of the 550 capacitors.  That the evidence was used for this purpose could not have confused the jury because both Presidio's and ATC's experts agreed that fringe-effect capacitance is well known and always exists between the external contacts of a capacitor.  (Doc. No. 305, Trial Tr. Vol. II at 261; Doc. No. 306, Trial Tr. Vol. III at 151; Doc. No. 331, Trial Tr. Vol.

V at 78.)

ATC also erroneously argues that it sought to introduce into evidence its own computer simulations. (Doc. No. 399-1 at 24.) ATC was permitted to present its simulation evidence to the jury at trial. At trial, ATC initially only sought to have the exhibits at issue admitted as demonstratives, and the Court received them as demonstratives over Presidio's objections. (Doc. No. 331, Trial Tr. Vol. V at 50-52.) ATC later sought to have the exhibits admitted as evidence, and Presidio objected to the exhibits pursuant to Federal Rule of Evidence 403 on the grounds that they also contained inadmissible editorial comments. (Id. at 69-70.) The Court sustained the objection. (Id.) Presidio stated that it would be fine to admit the exhibits if the editorial comments were removed, but ATC never sought to introduce the exhibits into evidence without the editorial comments. (Id. at 70.) Further, ATC has failed to show that it was prejudiced by the Court's refusal to admit the exhibits into evidence. ATC states that the purpose of these exhibits was to show that non-infringing capacitors have fringing field lines between their external contacts. (Doc. No. 399-1 at 24.) But this evidence then was cumulative of other evidence in the record because both sides' experts agreed that fringe-effect capacitance is well known and always exists between the external contacts of a capacitor. (Doc. No. 305, Trial Tr. Vol. II at 261; Doc. No. 306, Trial Tr. Vol. III at 151; Doc. No. 331, Trial Tr. Vol. V at 78.) Accordingly, the Court rejects ATC's argument that it is entitled to a new trial based on the computer simulation evidence that was admitted at trial.[4]

The jury's infringement verdict was supported by substantial evidence and not against the clear weight of evidence. Presidio's infringement expert provided testimony,

---

[4] ATC also argues that it is entitled to a new trial because the Court allowed Presidio's witnesses to testify that the December 8, 2015 reexamination certificate did not change the scope of the asserted claims. (Doc. No. 399-1 at 25 n.12; Doc. No. 432 at 14.) ATC has failed to explain how it was prejudiced by this testimony. The Court instructed the jury as to the proper scope of the asserted claims under the Court's claim construction orders. (Doc. No. 327 (Court's Instruction No. 17).) "A jury is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234 (2000).

supported by analysis and testing, explaining how the accused products satisfied all the limitations in the asserted claims.  (See Doc. No. 305, Trial Tr. Vol. II at 243-44, 249-65; Doc. No. 306, Trial Tr. Vol. III at 1-80.)  This testimony was more than adequate to allow the jury to reach its finding of infringement.  See, e.g., Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1373-74 (Fed. Cir. 2009).  Because the jury's infringement verdict was supported by substantial evidence, it must be upheld.  See Pavao, 307 F.3d at 918.  Accordingly, the Court denies ATC's motion for judgment as a matter of law of no infringement, or in the alternative, for a new trial on the issue of infringement.

### D.    Induced Infringement

ATC moves for judgment as a matter of law of no induced infringement, or in the alternative, for a new trial on the issue of induced infringement.  (Doc. No. 400-1 at 22-24.)  ATC argues that the jury's finding of active inducement was not supported by substantial evidence.  (Id.)

35 U.S.C. § 271(b) provides:  "Whoever actively induces infringement of a patent shall be liable as an infringer."  To prove inducement, the patentee must establish that "the defendant knew of the patent and that 'the induced acts constitute patent infringement.'"[5] Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015).  Intent can be shown through circumstantial evidence.  Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009).  For example, evidence of active steps taken to encourage direct infringement can be found in "'advertising an infringing use or instructing how to engage in an infringing use.'"  Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp., 785 F.3d 625, 630-31 (Fed. Cir. 2015) (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster,

---

[5]    To prove inducement, the patentee must also establish direct infringement.  See Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1322 (Fed. Cir. 2009) ("'[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe.'").  As explained in the prior section, substantial evidence supports the jury's finding that the accused products directly infringe the asserted claims of the '356 patent.  See supra.

Ltd., 545 U.S. 913, 936 (2005)).

At trial, Presidio presented sufficient evidence to allow the jury to find that ATC knew about of the '356 patent.  One of ATC's engineers, who was involved in the design of the accused products, testified that he was aware of the application that later issued as the '356 patent and the '356 patent itself.  (Doc. No. 305, Trial Tr. Vol. II at 48-49, 56-57, 81-83.)

Presidio also presented sufficient evidence to allow the jury to find that ATC knew that the induced acts constituted patent infringement.  ATC's design engineer testified that he not only knew about the '356 patent, but also the results of the prior litigation.  (Id. at 57.)  Further, Presidio presented evidence showing that ATC actively promoted and sold the 550 capacitors to its customers for use, and provided information related to the accused products to its customers, such as data sheets.  (Id. at 3, 112-13.)  Presidio also presented evidence showing that ATC promoted the 550 capacitors to its customers as a replacement for the 545L capacitor – the capacitor that was found to infringe the '356 patent in the prior action.  (Id. at 56-57, 137-38, 153-54, 167-68.)  This evidence was sufficient to support the jury's finding of inducement.[6]  See Takeda, 785 F.3d at 630-31; see, e.g., i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 851-52 (Fed. Cir. 2010) (affirming the jury's finding of inducement as supported by substantial evidence where the evidence in the record showed that the defendant provided instructions that taught users to practice the accused product in a manner the defendant knew would result in an infringing use).

ATC argues that there was insufficient evidence to establish its intent to induce infringement of the '356 patent because by December 8, 2015 – the time when the relevant

---

[6]  ATC argues that this evidence is insufficient to establish inducement because these actions occurred prior to the claims being amended through the December 8, 2015 reexamination certificate and during the period when ATC's sales were determined to be lawful under the Court's intervening rights ruling.  (Doc. No. 434 at 16.)  ATC argues that until December 8, 2015, it knew that the '356 patent was invalid and, thus, knew there could be no infringement and there was no corresponding intent to induce.  (Id.)  This argument is foreclosed by the Supreme Court's recent decision in Commil.  In Commil, the Supreme Court held that "a belief as to invalidity cannot negate the scienter required for induced infringement."  135 S. Ct. at 1929.

period of infringement began – ATC had an objectively reasonable non-infringement defense.  (Doc. No. 400-1 at 23-24.)  To the extent ATC is arguing that an objectively reasonable non-infringement defense negates a finding of inducement, the Federal Circuit has recently rejected this contention.  See Unwired Planet, LLC v. Apple Inc., No. 2015-1725, 2016 WL 3947839, at *8 (Fed. Cir. July 22, 2016) (The Supreme Court's cases on inducement "require a showing of the accused infringer's subjective knowledge as to the underlying direct infringement.  The district court's reliance on the objective strength of Apple's non-infringement arguments as precluding a finding of induced or contributory infringement was erroneous.").  Further, to the extent ATC is arguing that the non-infringement defense it presented at trial was sufficient to allow the jury to find that it lacked the requisite intent to induce infringement, this argument also fails as the jury was not required to accept ATC's evidence on this issue and was free to reject it.  Cf. Harper, 533 F.3d at 1021 (explaining that in reviewing a motion for judgment as a matter of law, the court must "disregard all evidence favorable to the moving party that the jury is not required to believe").  Accordingly, the Court denies ATC's motion for judgment as a matter of law of no induced infringement, or in the alternative, for a new trial on the issue of induced infringement.

### E.     Willful Infringement

ATC moves for judgment as a matter of law of no willful infringement, or in the alternative, for a new trial on the issue of willful infringement.  (Doc. No. 400-1 at 3-22.) At the time the jury rendered its verdict, the Federal Circuit had held "that an award of enhanced damages [under section 284] requires a showing of willful infringement."  In re Seagate Tech., LLC, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc).

> To establish willful infringement, the patentee has the burden of showing "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." "The state of mind of the accused infringer is not relevant to this objective inquiry."  Only if the patentee establishes this "threshold objective standard" does the inquiry then move on to whether "this objectively-defined risk (determined by the record developed in the infringement proceeding) was

either known or so obvious that it should have been known to the accused infringer."

Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc., 776 F.3d 837, 844 (Fed. Cir. 2015) (quoting Seagate, 497 F.3d at 1371).  The Federal Circuit further held that the objective prong of the willfulness test is to be decided by the Court as a matter of law; while the subjective prong of the test is a question of fact.  See Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc., 682 F.3d 1003, 1006-08 (Fed. Cir. 2012).

On June 13, 2016, the Supreme Court issued its decision in Halo Elecs., Inc. v. Pulse Elecs., Inc., No. 14-1513, 579 U.S. __ (June 13, 2016).  In Halo, the Supreme Court rejected the Federal Circuit's two-part test from Seagate for determining when a district court may award enhanced damages as inconsistent with § 284.  Id., slip op. at 1-2.  The Supreme Court explained that § 284 commits the award of enhanced damages to the discretion of the district court.  See id. at 8, 12-13, 15.  The Supreme Court further explained that the Seagate test is "'unduly rigid'" and "'impermissibly encumbers'" a district court's discretion, particularly its requirement that there must be a finding of objective recklessness in every case before a district court may award enhanced damages. Id. at 9.  "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Id. at 10.  "Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the Seagate test." Id. at 11.

ATC first argues that it is entitled to judgment as a matter of law on the issue of willfulness because Halo commits the entire issue of enhanced damages to the district court's discretion and a separate factual finding of willfulness by a jury no longer exists under the standard.  (Doc. No. 400-1 at 3-8.)  The Court has previously rejected this argument, (Doc. No. 368 at 27), and this argument has also recently been rejected by the Federal Circuit.  In WBIP, LLC v. Kohler Co., the Federal Circuit held that Halo does not change "the established law that the factual components of the willfulness question should be resolved by the jury."  No. 2015-1038, 2016 WL 3902668, at *15 (Fed. Cir. July 19,

2016); see also id. at *15 n.13 (Halo "leaves in place our prior precedent that there is a right to a jury trial on the willfulness question."). ATC may disagree with the Federal Circuit's decision in WBIP. (Doc. No. 421at 2; Doc. No. 434 at 4-5.) Nevertheless, WBIP represents binding circuit law, and this Court must follow it. [7] See Yong v. I.N.S., 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it."). Accordingly, the Court rejects ATC's contention that it was an error for the Court to submit the issue of subjective willfulness to the jury.

ATC also argues that the jury's willfulness finding is invalid because there has been no finding as to the objective reasonableness of ATC's defenses. (Doc. No. 400-1 at 8-9; Doc. No. 434 at 8-10.) ATC argues that objective reasonableness remains a factor in any willfulness determination post-Halo. (Doc. No. 400-1 at 8.) This argument is also foreclosed by the Federal Circuit's recent decision in WBIP. In WBIP, the Federal Circuit held that "[p]roof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." 2016 WL 3902668, at *15 (Fed. Cir. July 19, 2016); see also Halo, 136 S. Ct. at 1933 ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."). Accordingly, the Court rejects ATC's contention that a jury must consider objective reasonableness when making a willfulness determination.

ATC next argues that the jury's willfulness finding should be vacated because the court's instructions on willfulness failed to properly reflect the standard set forth in Halo.

---

[7]    ATC characterizes the above statement from WBIP as dicta. (Doc. No. 421 at 2; Doc. No. 434 at 4.) The Court disagrees. The statement is not dicta because the panel's determination that the factual components of the willfulness question should still be decided by a jury was necessary to the panel's ultimate decision to affirm the district court's enhanced damages award. See N.L.R.B. v. Int'l Bhd. of Elec. Workers, Local 340, 481 U.S. 573, 592 n.15 (1987) (describing a statement in a prior case as dicta because it "was unnecessary to the disposition" of the case); Exp. Grp. v. Reef Indus., Inc., 54 F.3d 1466, 1472 (9th Cir. 1995) (describing dicta as statements that are not "necessary to the decision").

(Doc. No. 400-1 at 9-10; Doc. No. 434 at 5-7.)  In support of this argument, ATC relies on the following language from Halo:  "Awards of enhanced damages . . . are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior.  The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  Halo, 136 S. Ct. at 1932.  But here, the Supreme Court is discussing the standard that a district court should use when ultimately determining whether to exercise its discretion and award enhanced damages, not the standard that should be used by the factfinder when making a finding as to subjective willfulness.  Accordingly, the Court rejects this argument.[8]

Finally, ATC argues that it is entitled to judgment as a matter of law as to willfulness because there was insufficient evidence to support a finding of willfulness even under the standard applied by the jury.[9]  (Doc. No. 400-1 at 10-22.)  The Court disagrees.  The jury's

---

[8]    In its reply brief, ATC argues for the first time that jury's willfulness finding was insufficient because the jury was not asked to make specific factual findings by answering special interrogatories in the verdict.  (Doc. No. 434 at 7-8.)  This argument is waived because ATC did not object to the verdict form on this ground at trial.  (See Doc. No. 331, Trial Tr. Vol. V at 245-57; Doc. No. 332, Trial Tr. Vol. VI at 3-4.)  This argument is also waived because ATC raised this argument for the first time in a reply brief.  See Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); accord Novosteel SA v. U.S., Bethlehem Steel Corp., 284 F.3d 1261, 1274 (Fed. Cir. 2002).

[9]    The Court provided the following jury instruction as to willful infringement:

    In this case, Presidio also argues that ATC willfully infringed Presidio the '356 patent.

    To prove willful infringement against ATC, Presidio must first persuade you that ATC infringed a valid and enforceable claim of Presidio's asserted patent.  The requirements for proving such infringement were discussed in my prior instructions.  In addition, to prove willful infringement, Presidio must persuade you by clear and convincing evidence that on or after December 8, 2015, ATC acted with reckless disregard of the claims of the patent holder's patent.  When a party has the burden of proving something by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

willfulness finding was supported by substantial evidence.  One of ATC's engineers who was involved in the design of the accused products, testified that he was aware of the application that later issued as the '356 patent and the '356 patent itself.  (Doc. No. 305, Trial Tr. Vol. II at 48-49, 56-57, 81-83, see also Doc. No. 426-6, Ex. F (Trial Ex. 44); Doc. No. 426-7, Ex. G (Trial Ex. 46); Doc. No. 426-9, Ex. I (Trial Ex. 189).)  The engineer testified that he not only knew about the '356 patent, but also the results of the prior litigation.  (Doc. No. 305, Trial Tr. Vol. II at 57.)  Further, Presidio presented evidence showing that ATC promoted the 550 capacitors to its customers as a replacement for the 545L capacitor – the capacitor that was found to infringe the '356 patent in the prior lawsuit.  (Id. at 56-57, 137-38, 153-54, 167-68.)[10]  Presidio also presented evidence

---

> To demonstrate such "reckless disregard," Presidio must persuade you that ATC actually knew, or it was so obvious that ATC should have known, that its actions constituted infringement of a valid patent.  In deciding whether ATC acted with reckless disregard for Presidio's asserted patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors:
>
> > 1. Whether ATC acted in a manner consistent with the standards of commerce for its industry;
>
> > 2. Whether ATC intentionally copied a product of Presidio covered by the patents;
>
> > 3. Whether there is a reasonable basis to believe that ATC did not infringe or had a reasonable defense to infringement, including a belief that the patent-in-suit is invalid;
>
> > 4. Whether ATC made a good-faith effort to avoid infringing the patent, for example, whether ATC attempted to design around the patent;
>
> > 5. Whether ATC tried to cover up its alleged infringement.

(Doc. No. 327 at 35-36.)

[10]    ATC argues that this evidence is irrelevant because it predates December 8, 2015 – the date on which the relevant period of infringement began under the Court's intervening rights ruling.  (Doc. No. 400-1 at 10-11.)  ATC argues that this evidence can only establish ATC's knowledge during the non-infringement period.  (Id.)  The Court disagrees.  Evidence of what ATC knew prior to December 8, 2015 is relevant to what ATC knew after December 8, 2015.  (Doc. No. 275 at 12-13.)  Indeed, it is generally reasonable to infer that if a person knows about something prior to a certain date, that person retains that knowledge after that certain date.

14-cv-02061-H-BGS

showing that ATC was aware that the claims as amended had survived three PTO reexamination proceedings that ATC itself had instituted.  (Doc. No. 304, Trial Tr. Vol. I at 143; Doc. No. 305, Trial Tr. Vol. II at 192.)  This evidence was sufficient for the jury to find that ATC acted with reckless disregard of the claims of the '356 patent.

ATC notes that its corporate secretary, Mr. Evan Slavitt, testified that as of December 8, 2015 – the date infringement began – he had reason to believe, based on the expert reports and pleadings in the case, that ATC was not infringing the '356 patent.  (Doc. No. 400-1 (citing Doc. No. 330, Trial Tr. Vol. IV at 216-17; Doc. No. 331, Trial Tr. Vol. V at 1-2).)  But the jury was not required to credit this testimony.  Cf. Harper, 533 F.3d at 1021 (explaining that in reviewing a motion for judgment as a matter of law, the court must "disregard all evidence favorable to the moving party that the jury is not required to believe").  In addition, the Court notes that the jury found willful infringement by clear and convincing evidence – a higher burden of proof than is required after Halo.  See 136 S. Ct. at 1934.  Accordingly, the jury's willfulness finding was supported by substantial evidence and was also not against the clear weight of evidence.

Moreover, the Court notes that ATC's motion on this issue is essentially moot because the Court, exercising its sound discretion, ultimately declines to award Presidio enhanced damages despite the jury's finding of willful infringement.   See infra.  Accordingly, the Court denies ATC's motion for judgment as a matter of law of no willful infringement, or in the alternative, for a new trial on the issue of willful infringement.

### F.     Lost Profits

Presidio moves for judgment as a matter of law of no lost profits, or in the alternative, for a new trial on lost profit damages on two grounds.  First, ATC argues that Presidio failed to establish that it was entitled to lost profit damages because it failed to prove the absence of non-infringing alternatives.  (Doc. No. 402-1 at 4-13.)  Second, ATC argues that Presidio failed to establish that it was entitled to lost profit damages because it failed to properly apportion between the patented and unpatented features of the accused products.  (Id. at 13-19.)  ATC further argues that because Presidio failed to prove that it

is entitled to lost profit damages, Presidio is only entitled to damages in the form of a reasonable royalty of $0.25 per capacitor.  (Id. at 1, 4.)

35 U.S.C. § 284 provides:  "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284. "The phrase 'damages adequate to compensate' means full compensation for any damages the patent owner suffered as a result of the infringement.  Full compensation includes any foreseeable lost profits the patent owner can prove."  Grain Processing Corp. v. Am. Maize-Products Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999) (internal citations and quotation marks omitted).

"To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer."  Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); accord Grain Processing, 185 F.3d at 1349 ("To recover lost profits, the patent owner must show 'causation in fact.'").  "A showing under the four-factor Panduit test establishes the required causation."  Versata Software, Inc. v. SAP Am., Inc., 717 F.3d 1255, 1264 (Fed. Cir. 2013) (citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978)).  The four-factor Panduit test requires the patentee to show: "(1) demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit that would have been made."  Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 702 F.3d 1351, 1359–60 (Fed. Cir. 2012).  "Causation of lost profits 'is a classical jury question.'"  Versata, 717 F.3d at 1264.

### i.      Available Non-Infringing Alternatives

ATC argues that the jury's finding as to the second prong of the Panduit test – that there is an absence of acceptable noninfringing substitutes – was not supported by substantial evidence.  (Doc. No. 402-1 at 4.)  Specifically, ATC argues that Presidio failed to bear its burden of demonstrating that ATC's 560L capacitor was not an available and

acceptable noninfringing product during the relevant infringement period.  (Id. at 6.)

"[T]o be an acceptable non-infringing substitute, the product or process must have been available or on the market at the time of infringement." Grain Processing, 185 F.3d at 1349 (emphasis removed).  "[M]arket sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost profits." Id. at 1352.  "[A]n available technology not on the market during the infringement can constitute a noninfringing alternative." Id. at 1351.  But, when the alleged alternative is not on the market during the accounting period, a factfinder may reasonably infer that it was not available as a noninfringing substitute, and the accused infringer bears the burden of overcoming this inference by showing that the substitute was actually available during the accounting period.  Id. at 1353; DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1331 (Fed. Cir. 2009).  Further, "the '[m]ere existence of a competing device does not make that device an acceptable substitute.'" Presidio, 702 F.3d at 1361.

ATC argues that Presidio bears the burden of demonstrating that the 560L capacitor is not an available noninfringing product because the 560L capacitor was on the market during the relevant infringement period.  (Doc. No. 402-1 at 6.)  The evidence presented at trial showed that ATC sold 88,000 560L capacitors during the relevant infringement period.  (Doc. No. 330, Trial Tr. Vol. IV at 25, 213; Doc. No. 331, Trial Tr. Vol. V at 152, 174.)  But the evidence in the record showed that all of these sales were to a single customer, (id.), and the product is not listed on ATC's website.  (Doc. No. 331, Trial Tr. Vol. V at 167.)  Presidio's damages expert, Mr. Thomas, testified that these sales were made on an as needed basis, and that the 560L capacitor was not widely advertised or touted as a competitive product as to Presidio's BB capacitor.[11]  (Id. at 25-27, 29; Doc. No.

---

[11]   ATC renews its contention that the Court should have excluded Mr. Thomas from testifying that the 560L capacitor does not constitute an available noninfringing alternative.  (Doc. No. 402-1 at 22-23; see also Doc. No. 251 at 5-11.)  The Court again rejects ATC's contention that the Court should have excluded this testimony.  Mr. Thomas's testimony was relevant to Presidio's assertion of lost profit damages, specifically Panduit factor two: "absence of acceptable noninfringing substitutes." See Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1288 (Fed.

306, Trial Tr. Vol. III at 202-03.)   ATC did not present any evidence disputing these assertions.  In addition, Mr. Lambert Devoe, Presidio's product manager and CFO, testified that he was unaware of the 560L capacitor and that no Presidio customer or sales representative has ever mentioned the 560L capacitor to him.  (Doc. No. Trial Tr. Vol. II at 10-11.)  ATC's own witness testified that the 560 capacitors are not as good as the 550 capacitors.  (Doc. No. 330, Trial Tr. Vol. IV at 211.)  Further, in contrast to the 88,000 560L capacitors sold during the relevant period, ATC sold over a million 550 capacitors during the relevant period.  (See Doc. No. 330, Trial Tr. Vol. IV at 6.)  This evidence in the record was sufficient to allow the jury to find that the 560L was not an acceptable non-infringing alternative.

### ii.    Apportionment

ATC argues that Presidio is not entitled to lost profit damages because it failed to separate or apportion its damages between the patented and unpatented features of the accused products in its lost profits calculation.  (Doc. No. 402-1 at 17.)  But ATC has failed to show that an apportionment of the jury's damages award is necessary or appropriate in the present circumstances.

Here, the jury was instructed on apportionment[12] and lost profit damages, including

---

Cir. 2011) ("To be 'available,' an acceptable noninfringing substitute must have been 'available or on the market' at the time of infringement.").  Further, ATC's challenges to Mr. Thomas' testimony went to the weight of the testimony and its credibility rather than the admissibility of his opinions.  See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 970 (9th Cir. 2013) (affirming the denial of a motion to exclude where the movant's challenges went to "the weight of the testimony and its credibility, not its admissibility").

[12]    The Court's instruction on apportionment is as follows:

A damages award-either in the form of lost profits or a reasonable royalty should compensate a patentee only for the inventive aspects of its patent.  Therefore, if you find that ATC infringed the '356 patent, your damages award must reflect the value you find attributable to that patent.

Where the accused products have patented and non-patented features, you may consider an apportionment of the damages between the patented features and the unpatented features, so that your award is based only on the value of the patented

the Panduit test.  (Doc. No. 327 (Court's Instructions Nos. 30-36, 40).)  The jury found that Presidio established that it should be awarded lost profit damages.  (Doc. No. 328 at 4.) Substantial evidence supports the jury's finding as to the second prong of the Panduit test. ATC does not challenge the jury's findings as to the other prongs of the Panduit test.  (See also Doc. No. 306, Trial Tr. Vol. III at 190-208; Trial Tr. Vol. IV at 1-15 (Mr. Thomas's testimony regarding the four Panduit factors).)  Under Federal Circuit law, "[a] showing under the four-factor Panduit test establishes the required causation" for lost profit damages.  Versata, 717 F.3d at 1264; accord Rite-Hite, 56 F.3d at 1545 ("When the patentee establishes the reasonableness of this inference, e.g., by satisfying the Panduit test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales.").  Thus, by satisfying the Panduit test, Presidio met its burden of proving causation and its entitlement to lost profits.  See id.  ATC fails to cite to any case holding that, after a party has satisfied Panduit's four-factor test and established entitlement to lost profits, a further apportionment of those profits is required.[13]  Cf. Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., No. C 10-3428 PSG, 2013 WL 10601009, at *2 n.12 (N.D. Cal. May 15, 2013) (noting that the Federal Circuit has suggested "that apportionment—at least as consumer demand stands as a way of showing apportionment—is unnecessary under

---

technology in the Accused Products.  On the other hand, if Presidio proves that the patent covers the infringing product as a whole and that the lost profits it seeks are tied to the intrinsic value of the patented features, you may award damages for lost profits attributable to the value of the invention consistent with the Court's instructions.  Presidio has the burden of proving damages by a preponderance of the evidence.  If Presidio proves infringement of a valid patent, you must award damages in no event less than a reasonable royalty.  Presidio bears the burden to establish a reasonable royalty attributable to the patented features.

(Doc. No.327 (Court's Instruction No. 40).)  "A jury is presumed to follow its instructions."  Weeks, 528 U.S. at 234.

[13]    ATC cites to a Federal Circuit case generally holding that "'apportionment is required even for non-royalty forms of damages.'"  (Doc. No. 402-1 at 15 (quoting Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1226 (Fed. Cir. 2014)).  But Ericsson did not involve lost profit damages, and, importantly, never holds, to extent there is an apportionment requirement for all forms of damages, satisfaction of the Panduit test does not satisfy that requirement.

Panduit" (citing Versata, 717 F.3d at 1265 ("[T]he Panduit factors place no qualitative requirement on the level of demand necessary to show lost profits."))).

Further, the Federal Circuit has explained that apportionment principles do not apply where the patentee shows that "'the patented feature creates the basis for customer demand or substantially creates the value of the component parts.'" Virnetx, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1326 (Fed. Cir. 2014).   ATC itself contends that customers for broadband capacitors seek bulk capacitance and low insertion loss at high frequencies and those requirements are what drives customers to buy the accused products.  (Doc. No. 433 at 11.)   Dr. Huebner, testified that although the accused products contain some internal capacitances that help with high frequency performance, the highest frequency performance of the capacitors is achieved by the claimed fringe-effect capacitance.  (Doc. No. 306, Trial Tr. Vol. III at 162-63; see also id. at 27-29, 38-53, 57-63; Doc. No. 331, Trial Tr. Vol. V at 222; Doc. No. 330, Trial Tr. Vol. IV at 32-33, 35-37.)   Accordingly, there was sufficient evidence in the record for the jury to find that the patented feature creates the basis for customer demand or substantially creates the value of the accused products.

Moreover, the Federal Circuit has held that apportionment principles do not apply when the accused product is the smallest saleable unit, and the asserted claims "cover[] the infringing product as a whole, not a single component of a multi-component product." AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1338 (Fed. Cir. 2015); see Virnetx, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1326-27 (Fed. Cir. 2014).   ATC does not dispute Presidio's assertion that the 550 capacitors are the smallest saleable units, (see Doc. No. 433 at 9), and there was substantial evidence supporting the jury's finding that the asserted claims of the '356 patent cover the accused products as a whole.   The asserted claims cover an entire multilayer capacitor, and the accused products are multilayers capacitors.[14]   See

---

[14]   ATC argues that Presidio did not invent the multilayer capacitor.  (Doc. No. 433 at 8.)   This may be true, but this fact is of no consequence.   In AstraZeneca, the Federal Circuit found that apportionment of the damages base at issue was not necessary because the claims covered the product as a whole – "the

'356 Patent at 13:26-28, 14:1-2, 14:9-16; '356 Patent Dec. 8, 2015 Reexamination Certificate at 1:23-2:9.  Presidio's infringement expert Dr. Huebner explained how the components in the accused products satisfy the various limitations contained in the asserted claims.  (See Doc. No. 305, Trial Tr. Vol. II. at 243-44, 249-65; Doc. No. 306, Trial Tr. Vol. III at 1-80.)  ATC argues that the asserted claims do not cover all of the features of the accused products because the accused products contain internal electrodes that have a unique shape and follow the teachings in U.S. Patent No. 8,446,705.  (Doc. No. 402-1 at 18-19.)  But Dr. Huebner testified that the accused products' internal electrodes satisfy the '356 patent's claim limitations of a "conductive first plate disposed within the dielectric body" and a "conductive second plate disposed within the dielectric body and forming a capacitor with the first plate."  (Doc. No. 306, Trial Tr. Vol. III at 7-8, 13-14, 16, 18.)  Accordingly, there was sufficient evidence in the record for the jury to determine that the asserted claims cover the accused products as a whole.

In sum, the Court rejects ATC's arguments that the jury's damages award cannot stand because Presidio failed to properly apportion its requested damages.  Cf. Virnetx, 767 F.3d at 1328 ("[W]e have never required absolute precision in [assigning value to the patented feature]; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty.").  Accordingly, the Court denies ATC's motion for judgment as a matter of law of no lost profits, or in the alternative, for a new trial on the issue of lost profit damages.

## II. Presidio's Motion for a Permanent Injunction

Presidio moves for the entry of a permanent injunction, enjoining ATC from marketing, selling, or offering to sell its 550 capacitors.  (Doc. No. 373-1.)  The Patent Act provides a patentee with the "right to exclude others from making, using, offering for sale, or selling the [patented] invention."  35 U.S.C. § 154(a)(1).  "In furtherance of this right to

---

drug core, the enteric coating, and the subcoating."  782 F.3d at 1338.  The Federal Circuit reached this determination without also finding that AstraZeneca invented a drug core, enteric coating, or subcoating.  See id.

exclude, district courts 'may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.'" Apple Inc. v. Samsung Elecs. Co., 809 F.3d 633, 638 (Fed. Cir. 2015) (quoting 35 U.S.C. § 283).

For a permanent injunction to issue, the party requesting an injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) legal remedies, such as money damages, are inadequate to compensate for that injury; (3) the balance of hardships warrants an injunction; and (4) the public interest would not be disserved by an injunction. eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). The Federal Circuit has explained that "[t]his analysis proceeds with an eye to the 'long tradition of equity practice' granting 'injunctive relief upon a finding of infringement in the vast majority of patent cases.'" Presidio, 702 F.3d at 1362; see also Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("Although eBay abolishes our general rule that an injunction normally will issue when a patent is found to have been valid and infringed, . . . it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude."). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." eBay, 547 U.S. at 391.

A.    Irreparable Harm

"To satisfy the first eBay factor, the patentee must show that it is irreparably harmed by the infringement." Apple Inc. v. Samsung Elecs. Co., 809 F.3d 633, 639 (Fed. Cir. 2015). "[F]acts relating to the nature of the competition between the parties undoubtedly are relevant to the irreparable harm inquiry." Robert Bosch, 659 F.3d at 1150. ATC and Presidio are direct competitors. ATC's 550 capacitors directly compete with Presidio's BB capacitors.[15] (Doc. No. 304, Trial Tr. Vol. I at 143-44; Doc. No. 305, Trial Tr. Vol. II

---

[15] The Court notes that in finding that Presidio established entitlement to lost profit damages through the Panduit test, the jury necessarily found that ATC's 550 capacitors directly compete with Presidio's BB capacitors. See Presidio, 702 F.3d at 1360.

at 1-2, 119; Doc. No. 306, Trial Tr. Vol. III at 194, 196.)  They are sold in the same market and to the same customers and potential customers.  (See id.)  "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude."  Presidio, 702 F.3d at 1363.  This is because "[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."  Douglas Dynamics, LLC v. Buyers Products Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013).

Further, Presidio has never licensed the '356 patent to anyone.  (Doc. No. 305, Trial Tr. Vol. II at 21-22.)  "Presidio's unwillingness to license favor[s] finding irreparable injury."[16]  Presidio, 702 F.3d at 1363.

The jury's lost profits award also supports a finding of irreparable injury.  In finding that Presidio established that it is entitled to lost profit damages, "the jury necessarily found ATC's [550] capacitor sales caused Presidio to lose BB capacitor sales.  This squarely supports a finding of irreparable harm."  Presidio, 702 F.3d at 1363; see Douglas Dynamics, 717 F.3d at 1344 ("Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales . . . .").  In sum, this evidence is sufficient to demonstrate irreparable injury.  See Presidio, 702 F.3d at 1363-64; Douglas Dynamics, 717 F.3d at 1344-45.

To satisfy the first eBay factor, the patentee must not only demonstrate irreparable injury, but also prove that the harm is caused by the infringement.  Apple, 809 F.3d at 639.  "This requires proof that a 'causal nexus relates the alleged harm to the alleged

---

[16]     ATC argues that Presidio's failure to license the '356 patent should be given no weight because the amended claims at issue only came into existence on December 8, 2015 when the reexamination certificate for the '356 patent issued.  (Doc. No. 409-1.)  But even if the Court only considers the period from December 8, 2015 to the present, the evidence in the record shows that Presidio consciously decided not to license the '356 patent during that period.  (Doc. No. 305, Trial Tr. Vol. II at 21-22.)  This decision favors a finding of irreparable injury.  See Presidio, 702 F.3d at 1363.

infringement.'"  Id.  "[P]roving a causal nexus requires the patentee to show 'some connection' between the patented features and the demand for the infringing products."  Id. at 641 ("The district court should have determined whether the record established that [the infringing] feature impacts customers' purchasing decisions.").  ATC itself contends that customers for broadband capacitors seek bulk capacitance and low insertion loss at high frequencies and those requirements are what drives customers to buy the accused products. (Doc. No. 409-1 at 11; Doc. No. 433 at 11.)  Dr. Huebner, testified that although the accused products contain some internal capacitances that help with high frequency performance, the highest frequency performance of the capacitors is achieved by the claimed fringe-effect capacitance.[17]  (Doc. No. 306, Trial Tr. Vol. III at 162-63; see also id. at 27-29, 38-53, 57-63; Doc. No. 331, Trial Tr. Vol. V at 222.)  This evidence is sufficient to satisfy the nexus requirement.  Cf. Apple Inc. v. Samsung Elecs. Co., 735 F.3d 1352, 1362 (Fed. Cir. 2013) (characterizing broadband capacitors as "relatively simple products" and noting that the causal nexus requirement is more easily satisfied for "simple" products); see also Broadcom Corp. v. Emulex Corp., 732 F.3d 1325, 1337 (Fed. Cir. 2013) ("As direct competitors in a limited market, [plaintiff]'s harm was clearly linked to [defendant]'s infringement of [plaintiff]'s patent property rights.").

ATC argues that Presidio cannot establish a causal nexus because Presidio's BB capacitor, which does not practice the invention claimed in the '356 patent, competes in the same market as ATC's 550 capacitors.  (Doc. No. 409-1 at 14-15.)  But the Federal Circuit explained in the prior litigation that "[e]ven without practicing the claimed invention, the patentee can suffer irreparable injury."  Presidio, 702 F.3d at 1363.

---

[17]     The Court rejects ATC's contention that it established at trial that the high frequency performance of the accused products is derived solely from their internal electrodes.  (Doc. No. 409-1 at 11-14.)  Presidio's expert, Dr. Huebner, never conceded at trial that the 550 capacitors achieve their high frequency performance solely from their internal electrodes.  (See Doc. No. 306, Trial Tr. Vol. III at 127, 162-63; Doc. No. 331, Trial Tr. Vol. V at 220-23.)  To the contrary, he specifically testified that although the accused products contain some internal capacitances that help with high frequency performance, the highest frequency performance of the capacitors is achieved by the claimed fringe-effect capacitance.  (Doc. No. 306, Trial Tr. Vol. III at 162-63.)

1      ATC also argues that Presidio has failed to establish irreparable injury because any

2   harm Presidio has suffered was caused by lawful "design wins" that occurred prior to

3   December 8, 2015.  (Doc. No. 409-1 at 15-18.)  ATC contends that an injunction cannot

4   be entered on account of otherwise lawful competition.  (Id. at 15.)  The Court recognizes

5   that under its intervening rights ruling, ATC is not liable for damages for any sales of 550

6   capacitors prior to December 8, 2015.  (Doc. No. 234 at 28.)  But those sales and the

7   resulting harm caused by the sales became infringing and unlawful on December 8, 2015

8   once the reexamination certificate with the amended claims issued.  ATC's ongoing sales

9   of infringing products, whether resulting from new or historical design wins, result in

10  irreparable harm to Presidio.  Further, the Federal Circuit has explained that "[t]he causal

11  nexus requirement ensures that an injunction is only entered against a defendant on account

12  of a harm resulting from the defendant's wrongful conduct, [and] that an injunction is not

13  entered on account of 'irreparable harm caused by otherwise lawful competition.'"  Apple,

14  809 F.3d at 640.  Here, Presidio has satisfied the causal nexus requirement.

15      ATC next argues that Presidio's nearly five-year delay in filing suit against ATC's

16  550 capacitors weighs against a finding of irreparable injury.  A period of delay is one

17  circumstance that a district court may consider in the context of the totality of the

18  circumstances when evaluating irreparable harm.  See Hybritech Inc. v. Abbott Labs., 849

19  F.2d 1446, 1457 (Fed. Cir. 1988); Apple, Inc. v. Samsung Elecs. Co., 678 F.3d 1314, 1325

20  (Fed. Cir. 2012).[18]  But "a showing of delay does not preclude, as a matter of law, a

21  determination of irreparable harm."  Hybritech, 849 F.2d at 1457.  Further, the Court in the

22  prior litigation entered an amended judgment following the parties' appeals on September

23  19, 2013, and denied Presidio's motion for relief from judgment on January 27, 2014.

24  Presidio Components, Inc. v. Am. Tech. Ceramics Corp., No. 08-cv-335-GPC (Doc. Nos.

---

[18]      The Court notes that these two cases involved a motion for a preliminary injunction, not a
motion for a permanent injunction.  Cf. Lermer Ger. GmBH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed.
Cir. 1996) ("[Preliminary and permanent injunctions] are distinct forms of equitable relief that have
different prerequisites and serve entirely different purposes.").

480, 490).  Presidio filed the present action on September 2, 2014.  (Doc. No. 1.)  The Court finds that Presidio acted reasonably in waiting for the prior litigation to be fully resolved prior to filing the present lawsuit.  See A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1033 (Fed. Cir. 1992) (en banc) (listing "other litigation" as a permissible excuse for a delay in filing suit).  Accordingly, any delay in filing the present action was reasonable and permissible and does not weigh against a finding of irreparable injury.

Finally, ATC argues that Presidio's inability or refusal to make certain capacitors or sell its capacitors to certain customers also shows a lack of irreparable harm.  (Doc. No. 409-1 at 19-22.)  First, ATC argues that Presidio is not suffering irreparable harm from ATC's sales of its 550U (100 nF) and 550S (50 volts rating) capacitors because Presidio has no competing product for those specific capacitors and thus could not have made those sales.  (Id. at 19-20.)  But this argument is inconsistent with the jury's verdict.  In awarding Presidio lost profits damages, the jury necessarily found that Presidio would have made the sales that were made by ATC for all of the accused products.  See Rite-Hite, 56 F.3d at 1545 ("To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer.").  The jury's verdict was not limited to any specific types of accused products.  (See Doc. No. 328 at 4.)  Second, ATC argues that Presidio is not suffering harm from ATC's sales of 550 capacitors to certain customers because either Presidio has decided not to do business with those customers or those customers will not buy from Presidio.  ATC's contention that Presidio will not do business with these customers is not supported by the record.  The evidence presented at trial shows that Presidio is willing to do business with and sell its capacitors to those specific customers.  (Doc. No. 305, Trial Tr. Vol. II at 15-20; Doc. No. 415-3, Devoe Decl. ¶¶ 7-9.)  Indeed, the evidence showed that Presidio actively sells its BB capacitors to two of the identified customers.  (Doc. No. 305, Trial Tr. Vol. II at 15; Doc. No. 415-3, Devoe Decl. ¶ 9.)  Further, the evidence presented by ATC only shows that those two customers have currently decided not to buy Presidio capacitors

and are instead buying ATC's 550 capacitors.  (Doc. No. 409-11, Ex. 32; Doc. No. 409-14, Ex. 35; Doc. No. 409-2, Tessaro Decl. ¶¶ 5-6.)  The evidence does not show that these customers would still refuse to buy Presidio's capacitors if the 550 capacitors were removed from the market.  Accordingly, ATC has failed to show that Presidio is unable to make sales to those companies.

In sum, Presidio has shown that it has suffered irreparable harm that is caused by ATC's infringement.  The Court rejects ATC's arguments to the contrary.  Accordingly, Presidio has satisfied the first <u>eBay</u> factor.

### B.    Inadequate Remedy at Law

"The second <u>eBay</u> factor is whether 'remedies available at law, such as monetary damages, are inadequate to compensate' for the irreparable harm suffered by the patentee." <u>Apple</u>, 809 F.3d at 644–45.  ATC itself asserts that the accused products operate within a "design win" market.  (Doc. No. 409-1 at 6-10.)  The Federal Circuit has explained that "the structural nature of a design win market favors a finding that monetary damages are inadequate."  <u>Broadcom Corp. v. Qualcomm Inc.</u>, 543 F.3d 683, 703 (Fed. Cir. 2008) (internal quotation marks omitted); <u>see also, e.g.</u>, <u>Broadcom</u>, 732 F.3d at 1336, 1338 (affirming district court's finding that "money damages were inadequate to compensate [plaintiff] largely due to incumbency effects from the design-win market conditions").

Presidio's decision not to license the '356 patent also supports a finding that monetary damages are inadequate.  <u>See</u> <u>Acumed LLC v. Stryker Corp.</u>, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (finding whether the patentee has licensed the invention relevant to the determination of whether money damages are adequate).  Further, this factor favors an injunction where "[t]here is no reason to believe that [the defendant] will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction."  <u>Robert Bosch</u>, 659 F.3d at 1155.  Presidio has presented the Court with evidence showing that ATC continues to offer the accused products for sale even after the jury's verdict.  (Doc. No. 372-2, Ex. A.)  Further, ATC has represented to the Court that it does not intend to discontinue the accused products until an injunction is entered.  (Doc.

No. 409-1 at 30.)  Accordingly, there is no reason to believe that ATC will stop infringing absent an injunction, and Presidio has established that money damages are insufficient to compensate for the irreparable harm it has suffered.

### C.     Balance of Hardships

"To satisfy the third eBay factor, the patentee must show that the balance of hardships weighs in its favor."  Apple, 809 F.3d at 645.  The balance to be "considered is only between a plaintiff and a defendant."  Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1330 (Fed. Cir. 2008).

ATC's infringement harmed Presidio by causing lost sales and by forcing Presidio to compete against its own patented invention, which places a substantial hardship on Presidio.  See Apple, 809 F.3d at 646 ("Samsung's infringement harmed Apple by causing lost market share and lost downstream sales and by forcing Apple to compete against its own patented invention, which 'places a substantial hardship' on a patentee, especially here where it is undisputed that it is essentially a two-horse race."); Robert Bosch, 659 F.3d at 1156.  ATC argues that it will suffer hardships from a permanent injunction because it has made substantial investments in the development of it 550 series of capacitors, and an abrupt termination of sales would cause it to suffer customer alienation and loss of reputation.  (Doc. No. 409-1 at 26-27.)  But the Federal Circuit has explained that the consequences of a defendant's infringement, such as sunk development costs or loss of business, is irrelevant to this factor.[19]  See i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 863 (Fed. Cir. 2010); see also Broadcom, 543 F.3d at 704 ("'[O]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'").  In addition, the Court further notes that any potential hardship on ATC would be mitigated by the Court's inclusion of a

---

[19]     The Court also rejects ATC's argument that it will suffer hardship because it is difficult for ATC to know how to modify its capacitors to make them non-infringing.  (Doc. No. 409-1 at 28-29.)  It has been ATC's contention throughout this litigation that the 560L capacitor that it already manufactures and sells does not infringe the '356 patent.  (Doc. No. 202 at 66; Doc. No. 402-1.)

90-day sunset provision into the requested injunction.  See Broadcom, 543 F.3d at 704 (finding that inclusion of a sunset provision can ameliorate the potential hardships of an injunction).

"[T]he parties' sizes, products, and revenue sources" are also relevant factors for balancing the hardships.  i4i, 598 F.3d at 862.  Presidio asserts that ATC and its parent company AVX have tens of millions of dollars in cash and a total market cap exceeding two billion, while Presidio is a small, family-owned company.  (Doc. No. 373-1 at 20 (citing Doc. No. 373-15, Ex. N); Doc. No. 415 at 11; see also Doc. No. 414 at 7-8.)  ATC does not contest these assertions.  Accordingly, this factor weighs in favor of issuing an injunction.

### D.    Public Interest

"The fourth eBay factor requires the patentee to show that 'the public interest would not be disserved by a permanent injunction.'"  Apple, 809 F.3d at 646.  "[T]he public is best served by enforcing patents that are likely valid and infringed."  Abbott Labs. v. Andrx Pharm., Inc., 452 F.3d 1331, 1348 (Fed. Cir. 2006).  "As a result, the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors."  Apple, 809 F.3d at 647.

ATC argues that the public interest would be disserved by an injunction because the accused products provide unusual societal benefits to critical government, military, space, and infrastructure applications.  (Doc. No. 409-1 at 29-30.)  ATC argues that enjoining the 550 capacitors would cause important government, military, space, and infrastructure projects to suffer.  (Id.)  The Court rejects ATC's contention that its products provide unusual societal benefits.  Cf. Apple, 809 F.3d at 647 ("[The patentee] does not seek to enjoin the sale of lifesaving drugs.").  The evidence ATC presented in support of this contention only shows that ATC has certain government and infrastructure clients that have purchased 550 capacitors and would prefer to be able to continue to purchase them in the future.  (Doc. No. 409-3, Rabe Decl. ¶¶ 10-14; Doc. No. 409-2, Tessaro Decl. ¶¶ 5-6.) ATC and its evidence fails to specifically identify any government, military, space or

infrastructure projects that would actually suffer if the 550 capacitors were removed from the market.  ATC has not established that these unnamed projects could not continue with the use of other products.[20]  Further, the Court notes that any potential harm to the public would be mitigated by the inclusion of a 90-day sunset provision into the requested injunction.  See Broadcom, 543 F.3d at 704 ("[T]he sunset provisions mitigate the harm to the public.").  Accordingly, this factor favors entry of a permanent injunction.

E.    Conclusion

Weighing the above factors and the equities in this case, the Court, exercising its sound discretion, concludes that a permanent injunction is appropriate.  Accordingly, the Court grants Presidio's motion for a permanent injunction.  The Court will enter the permanent injunction in a separate order.

i.    Presidio's Proposed Injunction

Presidio has submitted a proposed permanent injunction.  (Doc. No. 373-16, Ex. O.) In paragraph three of its proposed permanent injunction, Presidio proposes the following language:

> It is hereby Ordered that ATC and its successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with them, including any parent and subsidiary entities during the period commencing on the date hereof and through the date of expiration of the '356 patent are hereby enjoined and restrained from infringing Claims 1-5, 16, and 18-19 of the '356 patent and are further hereby enjoined and restrained from making, using, selling, or offering to sell in the United States, or importing into the United States: the 550L, 550Z, 550S, and 550U capacitors; any other product that is only colorably different from the 550L, 550Z, 550S, and 550U capacitors.

---

[20]    The Court finds ATC's inability to specifically identify any concrete harm that would occur significant in light of the fact that ATC previously discontinued its 545L capacitor after that capacitor was found to infringe the '356 patent in the prior litigation.  Yet ATC cannot identify any concrete harm that resulted from the discontinuance of that product, particularly in light of counsel's prior representations to the Court that the 545L capacitors performed better than the 550 capacitors.  (Doc. No. 211 at 29-30.)

1  (Id.)

2      The Court adopts the majority of the language contained in Presidio's proposed

3  permanent injunction.  The Court rejects Presidio's inclusion of ATC's "successors,

4  assigns," and "parent and subsidiary entities" into the language of the injunction.  The

5  Federal Circuit has explained that "Rule 65(d) of the Federal Rules of Civil Procedure

6  specifies the proper form and scope of an injunction issued by a district court."  Int'l

7  Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1315 (Fed. Cir. 2004).  Rule 65(d)(2)

8  provides:  Every order granting an injunction "binds only the following . . . : (A) the parties;

9  (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons

10  who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or

11  (B)."  Rule 65(d) does not list successors, assigns, parents, and subsidiaries as those among

12  whom an injunction may be made binding upon.  See Eli Lilly & Co. v. Premo Pharm.

13  Labs., Inc., 843 F.2d 1378, 1381 (Fed. Cir. 1988) ("Rule 65(d) . . . does not include

14  successors and assigns as among those whom an injunction is 'binding only upon.'").

15      The Court also excludes from the injunction the language stating that ATC is

16  "enjoined and restrained from infringing Claims 1-5, 16, and 18-19 of the '356 patent."

17  "In the patent infringement context, [the Federal Circuit] has rejected as overly broad a

18  permanent injunction that simply prohibits future infringement of a patent."  Int'l Rectifier,

19  383 F.3d at 1316.  The Federal Circuit has explained that "the only acts the injunction may

20  prohibit are infringement of the patent by the adjudicated devices and infringement by

21  devices not more than colorably different from the adjudicated devices."  Id.; see also, e.g.,

22  Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 986 F.2d 476, 479–80 (Fed.

23  Cir. 1993) (rejecting permanent injunction where the order did "not state which acts of

24  [defendant] constitute infringement of the . . . patent" and the order did "not limit its

25  prohibition to the manufacture, use, or sale of the specific infringing device, or to infringing

26  devices no more than colorably different from the infringing device").  In addition, the

27  Court notes that similar modifications were made to Presidio's proposed permanent

28  injunction in the prior litigation on these same grounds.  See Presidio Components, Inc. v.

<u>Am. Tech. Ceramics Corp.</u>, No. 08-cv-335-GPC (Doc. No. 473 at 17-19).

ii.    ATC's Request for a Stay Pending Appeal and a Sunset Provision

ATC argues that in the event the Court grants Presidio's motion for a permanent injunction, the Court should stay the injunction pending an appeal and provide a one-year sunset provision in the injunction.  (Doc. No. 409-1 at 31.)  In deciding whether to grant a stay pending appeal, the Court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public."  <u>E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.</u>, 835 F.2d 277, 278 (Fed. Cir. 1987); <u>accord</u> <u>Standard Havens Prods. v. Gencor Indus.</u>, 897 F.2d 511 (Fed. Cir. 1990).  Exercising its sound discretion, the Court declines to stay the injunction pending appeal.  Based on the Court's review of the record and the totality of the circumstances in this case, the Court concludes that ATC has failed to demonstrate a likelihood of success on appeal.  Indeed, in its request, ATC fails to even address this factor.  Further, the Court concludes that the equities do not weigh in favor of granting a stay.

Exercising its sound discretion, the Court declines to include the requested one-year sunset provision into the permanent injunction, but will include a 90-day sunset provision. ATC has had ample time and notice to prepare for the possibility that this Court would enter a permanent injunction in this action.  A permanent injunction was entered in the prior litigation.  <u>Presidio Components, Inc. v. Am. Tech. Ceramics Corp.</u>, No. 08-cv-335-GPC (Doc. No. 473 at 19); <u>see also</u> <u>Presidio</u>, 702 F.3d at 1362-63.  The jury rendered its infringement verdict and awarded Presidio lost profit damages on April 18, 2016 – several months ago.  (Doc. No. 328.)  The Court issued its memorandum decision rejecting ATC's invalidity and equitable defenses on June 17, 2016 – two months ago.  (Doc. No. 368.)  The Court concludes that under the totality of the circumstances a one-year sunset provision is unnecessary and, instead, a 90-day sunset provision is appropriate.[21]  Accordingly, the

---

[21]    At the hearing, Presidio stated that it would not object to the inclusion of a 90-day sunset provision into the permanent injunction.

Court includes a 90-day sunset provision into its permanent injunction.

**IV.    Presidio's Motion for Enhanced Damages**

Presidio moves for an award of enhanced damages pursuant to 28 U.S.C. § 284. (Doc. No. 377-1 at 3-24.)  Section 284 provides that a court "may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  In <u>Halo Elecs., Inc. v. Pulse Elecs., Inc.</u>, the Supreme Court held that "[s]ection 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement."[22]  136 S. Ct. at 1935.  But the Supreme Court further explained that although "[d]istrict courts enjoy discretion in deciding whether to award enhanced damages, and in what amount", that discretion is not without limits.  <u>Id.</u> at 1932.

Enhanced damages are generally appropriate under § 284 only in "egregious cases" of misconduct beyond typical infringement and should not be awarded in "garden-variety cases."  <u>Id.</u> at 1932, 1934-35.  "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate."  <u>Id.</u> at 1932.  The culpability of the infringer should be "measured against the knowledge of the actor at the time of the challenged conduct."  <u>Id.</u> at 1933.  In determining whether enhanced damages are appropriate, "courts should . . . take into account the particular circumstances of each case." <u>Id.</u>; <u>see also</u> <u>id.</u> at 1935 ("In applying this discretion, district courts are 'to be guided by [the] sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act.").

In <u>Halo</u>, the Supreme Court also explained that entitlement to enhanced damages need only be proven by a preponderance of the evidence.  <u>Id.</u> at 1934.  And a district court's determination of whether to award enhanced damages is reviewed for abuse of discretion

---

[22]    In <u>Halo</u>, the Supreme Court rejected the Federal Circuit's <u>Seagate</u> test for determining whether enhanced damages are appropriate as "'unduly rigid,'" as "'it impermissibly encumbers [section 284's] grant of discretion to district courts.'"  136 S. Ct. at 1932; <u>see also</u> <u>id.</u> at 1933-34 ("Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the <u>Seagate</u> test.").

14-cv-02061-H-BGS

on appeal.  Id.

After reviewing the particular circumstances in this case, including the record and the parties' arguments, the Court, exercising its sound discretion, declines to award Presidio enhanced damages.  The Court begins by noting that the jury found that ATC willfully infringed the '356 patent, (Doc. No. 328 at 4), and the Court has denied ATC's post-trial motion challenging the jury's willfulness finding.  See supra.  But both the Supreme Court in Halo and the Federal Circuit in WBIP have held an award of enhanced damages need not follow a finding of willful infringement.  See Halo, 136 S. Ct. at 1933 ("[N]one of this is to say that enhanced damages must follow a finding of egregious misconduct."); WBIP, 2016 WL 3902668, at *15 n.13 ("[T]his is not to say that a jury verdict of willful infringement ought to result in enhanced damages.").  Thus, the Court may still exercise its discretion and decline to award enhanced damages based on the particular circumstances in this case even though there has been a finding of willful infringement.[23]  See id.; see, e.g., Trustees of Boston Univ. v. Everlight Elecs. Co., No. 12-11935-PBS, 2016 WL 3976617, at *3 (D. Mass. July 22, 2016) (finding, in its discretion, that the case did not warrant an award of enhanced damages even though the jury found willful infringement).

Here, the unique circumstances of this case do not warrant an award of enhanced damages.  At the summary judgment stage, the Court granted ATC's motion for summary judgment in its favor on its defense of absolute intervening rights. (Doc. No. 234.)  In that

---

[23]   Presidio argues that a jury's finding of willful infringement creates a presumption in favor of an award of enhanced damages.  The Court rejects Presidio's contention.  First, Halo itself contains no mention of a presumption in favor of enhanced damages upon a finding of willful infringement.  Second, and more importantly, the case Presidio cites in support of its argument does not mention a presumption in favor of enhanced damages upon a finding of willful infringement.  (See Doc. No. 377-1 at 5 (citing Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996)).)  The Federal Circuit's decision in Jurgens never refers to a presumption in favor of an award of enhanced damages.  The Jurgens court only held that "[u]pon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees."  80 F.3d at 1572.  Thus, even assuming the Jurgens standard still applies post-Halo, this Court's decision complies with Jurgens as the Court provides its reasoning for not awarding enhanced damages.

order, the Court held that due to Presidio narrowing the asserted claims during reexamination proceedings, Presidio is only entitled to infringement damages for the time period following the issuance of the December 8, 2015 reexamination certificate. (Id. at 28.) Thus, the period of infringement in the present case began on December 8, 2015.

This fact is important to the Court's analysis because, in Halo, the Supreme Court explained that an infringer's culpability should be measured at the time of the challenged conduct. 136 S. Ct. at 1933; see also WBIP, 2016 WL 3902668, at *15 ("[A]s the Supreme Court explained in Halo, timing does matter."). ATC began selling the accused products in January 2010. Under the Court's intervening rights ruling, ATC is not liable for any sales of 550 capacitors that occurred prior to December 8, 2015. Therefore, at the time infringement of the asserted claims began on December 8, 2015, ATC had already been permissibly selling the accused products without being subject to damages liability for almost six years. Moreover, at the time infringement began, Presidio and ATC were well into the present litigation. Specifically, by December 8, 2015, ATC had received the Court's claim construction order, developed noninfringement and invalidity theories that were supported by expert reports, and filed motions for summary judgment on several issues. (Doc. No. 149.) By December 8, 2015, ATC had also just succeeded in causing Presidio to substantively narrow the scope of the asserted claims in reexamination proceedings that ATC instituted. Thus, under the unique circumstances of the present case, the Court declines to find that the willful infringement that occurred in the case after December 8, 2015 constitutes an "egregious" case of misconduct warranting an award of enhanced damages. Rather, the present action was a "garden-variety" hard-fought patent infringement action between two competitors.

Moreover, the Court notes that Presidio's invalidity defense at trial, although ultimately rejected by the Court, was not meritless. The Court also notes that there was no evidence of bad faith or litigation misconduct by ATC in this action. Accordingly, the Court, exercising its sound discretion, declines to award enhanced damages. The Court denies Presidio's motion for enhanced damages.

**V.      Presidio's Motion for Attorney's Fees**

Presidio also moves for attorney's fees pursuant to 35 U.S.C. § 285.  (Doc. No.377-1 at 25-30.)  "Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1752 (2014).  Section 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry."  MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 915 (Fed. Cir. 2012).  The court first determines whether the prevailing party has proven that the case is "exceptional," and, if so, the court then determines whether an award of attorney's fees is justified.  Id. at 1915-16.

The Supreme Court has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  Octane Fitness, 134 S. Ct. at 1756 (stating that "exceptional" means "'uncommon,' 'rare,' or 'not ordinary'").  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  Id.  In determining whether to award fees, district courts may consider a nonexclusive list of factors, including "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  Id. at 1756 n.6.  "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  Id. at 1757.  There is no precise rule or formula for determining whether to award attorney's fees, but instead equitable discretion should be exercised in light of the above considerations.  Id. at 1756.

Entitlement to fees under § 285 must be shown by a preponderance of the evidence.  See Octane Fitness, 134 S. Ct. at 1758.  A district court's determination of whether to award

42

attorney's fees under 35 U.S.C. § 285 is reviewed for abuse of discretion.  Highmark Inc. v. Allcare Health Mgmt. Sys., 134 S. Ct. 1744, 1749 (2014) ("[T]he determination of whether a case is 'exceptional' under § 285 is a matter of discretion.").

After reviewing the totality of the circumstances including the record in this action and the parties' arguments, the Court declines to find that the present case is "exceptional" and declines to award Presidio attorney's fees.  In the present action, Presidio accused ATC's 550 capacitors of infringing the '356 patent, asserting a period of infringement beginning in January 2010 when Presidio began selling the accused products.  (Doc. No. 285-1, Thomas Expert Report at 14, 28-31.)  Based on this asserted period of infringement, Presidio initially sought over $16 million in lost profit damages for the period of first quarter of 2010 through September 13, 2015.  (Id.)  At the summary judgment stage, ATC successfully obtained summary judgment in its favor on its affirmative defense of absolute intervening rights based on Presidio's narrowing of the scope of the asserted claims during ex parte reexamination proceedings that were instituted by ATC.  (Doc. No. 234.)  Because of this substantive change to the scope the asserted claims, the Court held that Presidio is only entitled to infringement damages in this case for the time period following the issuance of the December 8, 2015 reexamination certificate.  (Id. at 28.)  Thus, although Presidio ultimately prevailed at trial on the issues of infringement, willful infringement, and validity of the '356 patent and was awarded over $2 million in lost profits damages, prior to the trial, ATC prevailed on its absolute intervening rights defense, thereby substantially limiting the period of infringement at issue in the case and the damages Presidio could seek.  Thus, the present case was not a one-sided victory by Presidio.

Moreover, the Court notes that Presidio's invalidity defense at trial, although ultimately rejected by the Court, was not meritless.  The Court also notes that there was no evidence of bad faith or litigation misconduct by ATC in this action.  The present action was a garden-variety hard-fought patent infringement action between two competitors. Accordingly, the Court, exercising its sound discretion, declines to find the present case "exceptional" and declines to award Presidio attorney's fees.  The Court denies Presidio's

motion for attorney's fees.

## VI.   Presidio's Motion for Supplemental Damages

Presidio moves for an award of supplemental damages for any sales of accused products occurring on and after February 21, 2016 – the date on which ATC last provided sales information for the accused products. (Doc. No. 372-1 at 1-3.) Specifically, Presidio requests (1) that the Court order ATC to account for all 550 capacitor sales made subsequent to the latest sales data ATC provided and that was utilized at trial, and (2) that the Court award it supplement damages on those as yet unaccounted for sales at the lost profits rate adopted by the jury – $1.58 per unit.[24] (Id. at 2.)

28 U.S.C. § 284 provides: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them." The Federal Circuit has explained that a patentee is not fully compensated if the damages award does not include future lost sales. Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1213 (Fed. Cir. 2010); see also Fresenius USA, Inc. v. Baxter Int'l, Inc., 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales of repair parts."). Therefore, a district court should award compensation for any infringing sales not assessed by the jury. See Finjan, 626 F.3d at 1213; Apple, Inc. v. Samsung Elecs. Co., 67 F. Supp. 3d 1100, 1117-18 (N.D. Cal. 2014), aff'd, 816 F.3d 788 (Fed. Cir. 2016). In addition, "[c]ourts routinely grant motions for a further accounting where the jury did not consider certain periods of infringing activity post-verdict." Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd., 833 F. Supp. 2d 333, 347 (E.D.N.Y. 2011); accord Apple, 67 F. Supp. 3d at 1118. "Courts have [also] applied this reasoning

---

[24]   Presidio asserts that the jury awarded Presidio lost profits damages in the amount of $2,166,654 based on ATC's sale of 1,371,300 units. (Doc. No. 372-1 at 2 (citing Doc. No. 328 at 4).) $2,166,654 divided by 1,371,300 units equals $1.58 per unit.

to the situation in which an infringer provides sales data that does not cover all sales made prior to trial." Sealant Sys. Int'l, Inc. v. TEK Glob. S.R.L., No. 5:11-CV-00774-PSG, 2014 WL 1008183, at *5 (N.D. Cal. Mar. 7, 2014). An award of supplemental damages should be calculated consistent with the damages awarded in the jury's verdict. ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., No. 2:10CV248, 2011 WL 4899922, at *2 (E.D. Va. Oct. 14, 2011); see, e.g., Sealant Sys., 2014 WL 1008183, at *5; Mondis Tech. Ltd. v. Chimei InnoLux Corp., 822 F. Supp. 2d 639, 643 (E.D. Tex. 2011).

Presidio has presented the Court with evidence showing that ATC continues to offer the accused products for sale even after the jury's verdict. (Doc. No. 372-2, Ex. A.) Further, ATC has represented to the Court that it does not intend to discontinue the accused products until an injunction is entered. (Doc. No. 409-1 at 30.) Accordingly, Presidio is entitled to an accounting of and supplemental damages on any sales of infringing products not assessed by the jury. See Finjan, 626 F.3d at 1213; Apple, 67 F. Supp. 3d at 1117-18; Sealant Sys., 2014 WL 1008183, at *5.

In response, ATC does not dispute Presidio's contention that it is entitled to supplemental damages for sales of accused products made on or after February 21, 2016 at a rate of $1.58 per unit. Rather, ATC only argues that Presidio's motion is premature because ATC's motions for judgment as a matter of law are still pending. (Doc. No. 409-24 at 11.) The Court rejects this argument. ATC fails to explain why the Court cannot concurrently rule on both ATC's post-trial motions and Presidio's motion for supplemental damages. Moreover, the Court has ruled on and denied ATC's post-trial motions, and, therefore, the motions are no longer pending. See supra. Accordingly, the Court grants Presidio's motion for supplemental damages. The Court orders ATC to account for all 550 capacitor sales made subsequent to the latest sales data it provided to Presidio and that was utilized at trial and prior to the entry of the Court's permanent injunction. Further, the Court awards Presidio supplemental damages on those as yet unaccounted for sales at the rate of $1.58 per unit.

///

**VII.   Presidio's Motion for Interest**

   A.   Prejudgment Interest

Presidio moves for an award of prejudgment interest on its damages award.  (Doc. No. 372-1 at 3-6.)  Specifically, Presidio requests a prejudgment interest rate of 7 percent. (Id. at 4.)  28 U.S.C. § 284 provides: "the court shall award the claimant damages adequate to compensate for the infringement . . . together with interest and costs as fixed by the court."   The Supreme Court has interpreted section 284 to require that "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award[.]"   Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 657 (1983); see also Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996) ("[P]rejudgment interest is the rule, not the exception.").   The purpose of prejudgment interest is to "compensate[] the patent owner for the use of its money between the date of injury and the date of judgment."   Oiness v. Walgreen Co., 88 F.3d 1025, 1033 (Fed. Cir. 1996). "Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment."   Nickson Indus., Inc. v. Rol Mfg. Co., 847 F.2d 795, 800 (Fed. Cir. 1988).

In response, ATC argues that the Court should deny Presidio's request for prejudgment interest based on Presidio's undue delay in filing the present action.  (Doc. No. 409-24 at 2-7.)  The Court rejects ATC's contention.  "District courts have discretion to limit prejudgment interest where, for example, the patent owner has caused undue delay in the lawsuit, but there must be justification bearing a relationship to the award."  Nickson, 847 F.2d at 800 (citations omitted); see Gen. Motors Corp., 461 U.S. at 657 ("[I]t may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit.").  But here there was no undue delay in filing the action.  Presidio filed the present action on September 2, 2014. (Doc. No. 1.)  In granting ATC's motion for summary judgment of its affirmative defense of absolute intervening rights, the Court held that Presidio is entitled to infringement damages only for the time period following the issuance of the December 8,

46

2015 reexamination certificate.  (Doc. No. 234 at 28.)  Thus, Presidio initiated the present action prior to the entire period of infringement at issue in this case.  Indeed, Presidio is only seeking prejudgment interest from December 8, 2015 through June 17, 2016.  (Doc. No. 412 at 3.)  Moreover, even if the Court were to consider the relevant period to have begun in 2010 when ATC began selling the accused products, the Court finds that Presidio acted reasonably in waiting for the prior litigation to be fully resolved prior to filing the present lawsuit.  See A.C. Aukerman, 960 F.2d at 1033 (listing "other litigation" as a permissible excuse for a delay in filing suit).

ATC also argues that if the Court awards prejudgment interest, it should be at the three-month U.S. Treasury Bill rate.  The Court agrees with ATC on this point.  "A trial court is afforded wide latitude in the selection of interest rates" for prejudgment interest. Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991); accord Bio-Rad Labs., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986).  "Courts may use the prime rate, the prime rate plus a percentage, the U.S. Treasury Bill rate, state statutory rate, corporate bond rate, or whatever rate the court deems appropriate."  Apple, 67 F. Supp. 3d at 1121 (N.D. Cal. 2014); see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., No. 2:10-CV-248, 2011 WL 4899922, at *3 (E.D. Va. Oct. 14, 2011) ("[W]hile courts have selected different rates, courts most often award either the prime rate or the U.S. Treasury rate.").  In patent cases, courts typically only award prejudgment interest at the prime rate or higher where there is evidence that the patent owner would have been spared from borrowing money at the prime rate during the infringement period had the infringer been paying royalties.  See Finjan, Inc. v. Blue Coat Sys., Inc., No. 13-CV-03999-BLF, 2016 WL 3880774, at *18 (N.D. Cal. July 18, 2016); Apple, 67 F. Supp. 3d at 1121-22; Mars, Inc. v. Coin Acceptors, Inc., 513 F. Supp. 2d 128, 133 (D. N.J. May 22, 2007).  Here, Presidio has not put forth any evidence showing that it borrowed any money during the infringement period at the prime rate or higher.  Accordingly, the Court concludes that the appropriate rate is the U.S. Treasury Bill rate.  See, e.g., Laitram Corp. v. NEC Corp., 115 F.3d 947, 955 (Fed. Cir. 1997) (finding no abuse of discretion where

"the district court, in exercises of its discretion, awarded prejudgment interest and set the rate at the U.S. Treasury bill rate, compounded annually"); see also Apple, 67 F. Supp. 3d at 1122 ("The Treasury Bill rate has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement."). Accordingly, the Court grants Presidio's motion and awards Presidio prejudgment interest at the 3-month U.S. Treasury Bill rate, compounded monthly.[25]

### B.     Postjudgment Interest

Presidio also moves for an award of postjudgment interest pursuant to 28 U.S.C. § 1961.  (Doc. No. 372-1 at 6-7.)  An "award of postjudgment interest is governed by 28 U.S.C. § 1961."  Tinsley v. Sea-Land Corp., 979 F.2d 1382, 1383 (9th Cir. 1992).  Section 1961 provides "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment." "Under the provisions of 28 U.S.C. § 1961, postjudgment interest on a district court judgment is mandatory."  Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 290 (9th Cir. 1995).

ATC concedes that Presidio is entitled to postjudgment interest at the rate provided in 28 U.S.C. § 1961(a) from the date of the entry of judgment, June 17, 2016.  (Doc. No. 409-24 at 11.)  Accordingly, the Court grants Presidio's motion and awards Presidio postjudgment interest pursuant to 28 U.S.C. § 1961 at the statutory rate from the date of the entry of judgment, June 17, 2016.

///

---

[25]     Whether the prejudgment interest "should be compounded or uncompounded [is] left largely to the discretion of the district court."  Bio-Rad Labs., 807 F.2d at 969.  "Courts 'have recognized that compounding is necessary to fully compensate the patentee.'"  Apple, 67 F. Supp. 3d at 1122; see also Finjan, 2016 WL 3880774, at *18 ("'[M]ost [courts] apply some form of compounding.'").  The Court, exercising its discretion, agrees with Presidio that the prejudgment interest should be compounded monthly.  See, e.g., Stryker Corp. v. Zimmer Inc., No. 1:10-CV-1223, 2013 WL 6231533, at *30 (W.D. Mich. Aug. 7, 2013).

## <u>Conclusion</u>

For the reasons above, the Court:

1.      Denies ATC's Rule 50(b) motions for judgment as matter of law and Rule 59(e) motions for new trial;

2.      Grants Presidio's motion for a permanent injunction;

3.      Denies Presidio's motion for enhanced damages and attorney's fees; and

4.      Grants Presidio's motion for an award of supplemental damages and interest.

**IT IS SO ORDERED.**

DATED: August 17, 2016

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

14-cv-02061-H-BGS